McNEIL v CHARLEVOIX COUNTY

Docket No. 272410. Submitted April 4, 2007, at Lansing. Decided June 5,
2007, at 9:05 a.m. Leave to appeal sought.

Kent A. McNeil and other residents or business owners in Charlevoix
County brought an action in the Charlevoix Circuit Court against
Charlevoix County and Northwest Michigan Community Health
Agency (NMCHA), a multicounty district health department or-
ganized by Antrim, Charlevoix, Emmet, and Otsego counties. The
NMCHA had promulgated a regulation that prohibits smoking in
all enclosed public places, requires employers that do not wholly
prohibit smoking at an enclosed work site to designate an
NMCHA-approved smoking room (i.e., a separate enclosed area
that is independently ventilated so that smoke does not enter
other nonsmoking areas of the work site), and prohibits an
employer from discharging, refusing to hire, or otherwise retaliat-
ing against an employee for exercising his or her right to the
smoke-free environment created by the regulation. The plaintiffs
sought a judgment declaring the regulation invalid. The court,
Richard M. Pajtas, J., denied a motion for summary disposition
filed by the plaintiffs, who then appealed.

The Court of Appeals *held*:

1. The NMCHA acted within its authority when it promul-
gated the regulation at issue. Part 126 of the Public Health Code
(PHC), MCL 333.12601 *et seq.*, which governs smoking in public
places and is also known as the Michigan Clean Indoor Air Act
(MCIAA), expressly provides that the Michigan Department of
Community Health may authorize a local health department like
the NMCHA to enforce part 126 and the rules promulgated under
that part. MCL 333.12613(2). Even if the responsibility for the
implementation and enforcement of the restrictions established by
Part 126 had been exclusively granted to the Department of
Community Health, that would not, by itself, deny a local health
department the authority to promulgate, implement, and enforce
similar regulations of its own making. Part 24 of the PHC, MCL
333.2401 *et seq.*, which governs local health departments like the
NMCHA, charges local health departments with the duty to
continually and diligently endeavor to prevent disease, prolong

life, and promote the public health through organized programs, including those for the prevention and control of environmental health hazards. MCL 333.2433(1). Part 24 also provides that a local health department may adopt regulations to properly safeguard the public health, MCL 333.2435(d), or regulations that are necessary or appropriate to implement or carry out the duties or functions vested by law in the local health department, MCL 333.2441(1). Finally, Part 24 provides that a local health department shall implement and enforce laws for which responsibility is vested in the local health department. MCL 333.2441(1).

2. The regulation at issue is not preempted by the MCIAA. There is no direct conflict between the regulation and the state statute because the regulation does not permit what the statute prohibits or prohibit what the statute permits. The statute does not so occupy the field of regulation that local regulation by inferior levels of government is presumptively precluded, taking into consideration that the statute does not expressly provide that state regulation is to be exclusive, that the legislative history of the statute does not imply preemption, that the pervasiveness of the state regulatory scheme does not support a finding of preemption, and that nothing in the MCIAA indicates a legislative concern for statewide, uniform regulation of smoking.

3. The provision in the regulation that prohibits an employer from discharging, refusing to hire, or otherwise retaliating against a person for exercising his or her right to a smoke-free environment does not violate the public policy of allowing employment terminable at will by either employer or employee. An at-will employee's discharge violates public policy if the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty, the employee is discharged for the failure or refusal to violate the law in the course of employment, or the employee is discharged for exercising a right conferred by a well-established legislative enactment. Although the regulation at issue is not a legislative enactment or statement, it provides employees with certain specified rights and was, as required by MCL 333.2441(1), approved by the governing bodies of each of the counties served by the NMCHA. Given this and the public policy of minimizing the effects of smoking evinced by the Legislature through its enactment of Part 126 and § 12905 of Part 129, MCL 333.12905 (which governs smoking in public areas of food service establishments), the regulation's restriction on an employer's right to discharge an employee at will is consistent with the aforementioned exceptions.

Affirmed.

1. HEALTH — LOCAL HEALTH DEPARTMENTS — SMOKING REGULATIONS.

A local health department created pursuant to Part 24 of the Public Health Code has the authority under that part and Part 126, also known as the Michigan Clean Indoor Air Act, to promulgate, implement, and enforce regulations in indoor public places that are at least as stringent as those established by state law (MCL 333.2433[1], 333.2435[d], 333.2441[1], and 333.12613[2]).

2. HEALTH — LOCAL HEALTH DEPARTMENTS — SMOKING REGULATIONS — STATE LAW PREEMPTION.

A regulation by a local health department created pursuant to Part 24 of the Public Health Code that prohibits smoking in all enclosed public places and requires employers that do not wholly prohibit smoking at an enclosed work site to designate a department-approved smoking room for those of its employees who smoke does not conflict with, nor is it preempted by, Part 126 of the Public Health Code, also known as the Michigan Clean Indoor Air Act (MCL 333.2401 *et seq.* and 333.12601 *et seq.*).

3. HEALTH — LOCAL HEALTH DEPARTMENTS — SMOKING REGULATIONS — EMPLOYMENT TERMINABLE AT WILL.

A regulation by a local health department created pursuant to Part 24 of the Public Health Code that prohibits an employer from discharging, refusing to hire, or otherwise retaliating against an employee for exercising his or her right to a smoke-free working environment mandated by the regulation does not violate the public policy of recognizing the right to terminate employment at will (MCL 333.2401 *et seq.*).

*Murphy, Brenton & Spagnuolo, P.C.* (by *Vincent P. Spagnuolo* and *Samuel J. Frederick*), for Kent A. McNeil and others.

*Young, Graham & Elsenheimer, P.C.* (by *Dennis M. LaBelle* and *James G. Young*), for Northwest Michigan Community Health Agency.

Amici Curiae:

*Scott T. Beatty* and *Clifford E. Douglas* for the American Cancer Society, Great Lakes Division, Inc., and others.

Before: Saad, P.J., and Hoekstra and Smolenski, JJ.

Hoekstra, J. In this action for declaratory relief, plaintiffs appeal as of right the trial court's order denying their motion for summary disposition. We affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant Northwest Michigan Community Health Agency (NMCHA) is a multicounty district health department organized by Antrim, Charlevoix, Emmet, and Otsego counties under Part 24 of the Public Health Code (PHC), MCL 333.2401 *et seq.*[1] In purported furtherance of its duty to protect the public health and welfare in its district, the NMCHA promulgated what it entitled the Public Health Indoor Air Regulation of 2005 (the regulation). In addition to prohibiting smoking in all public places, the regulation requires employers who do not wholly prohibit smoking at an enclosed place of employment to designate an NMCHA-approved smoking room, which is required by the regulation to be "a separate enclosed area that is independently ventilated so that smoke does not enter other non-smoking areas of the worksite." The regulation additionally prohibits an employer from discharging, refusing to hire, or otherwise retaliating against an employee for exercising his or her right to the smoke-free environment afforded by the regulation.

After the regulation was approved by each of the four counties, plaintiffs, each of whom resides or operates a business within defendant Charlevoix County, brought

---

[1] Pursuant to § 2415 of Part 24, "[t]wo or more counties . . . , by a majority vote of each local governing entity and with approval of the [state] department [of community health], may unite to create a district health department." MCL 333.2415.

this action to invalidate the regulation by judicial declaration that the NMCHA was without authority to promulgate such a regulation and that the regulation itself was preempted by Part 126 of the PHC, MCL 333.12601 *et seq.*, which prohibits smoking in buildings used by the public except in designated areas. In seeking summary disposition on these grounds, plaintiffs argued that nothing in Part 126 of the PHC, which is also known as the Michigan Clean Indoor Air Act (MCIAA),[2] authorizes a local health department to enforce or augment the smoking restrictions set by the MCIAA. Plaintiffs further argued that § 12605 of the MCIAA, MCL 333.12605, grants owners and operators of public places the discretion to choose whether to maintain a smoking section or remain smoke-free, and that this discretion to permit smoking in public places constitutes a statutorily conferred right that a local health department cannot annul by regulation. Moreover, plaintiffs argued, where the owner or operator of a public place chooses to have a designated smoking area, § 12605 requires only that existing physical barriers and ventilation be used to minimize the toxic effects of smoking. Thus, insofar as the NMCHA regulation requires that smoking be restricted to a separate, enclosed area with independent ventilation, it conflicts with the MCIAA and must be found to be invalid.

Citing this Court's decision in *Michigan Restaurant Ass'n v City of Marquette*, 245 Mich App 63; 626 NW2d 418 (2001), plaintiffs further asserted that smoking is an issue better suited to regulation on a statewide basis, and that local regulation must therefore yield to the preemptive provisions of the MCIAA. Plaintiffs additionally argued that, to the extent the regulation impinges on the common-law right of an employer to

---

[2] See MCL 333.12616.

discharge an employee at will, the regulation violates public policy and is void. The trial court, however, disagreed and denied plaintiffs' motion. This appeal followed.

## II. ANALYSIS

Plaintiffs assert that the trial court erred in denying their motion for summary disposition. In doing so, plaintiffs again argue that the NMCHA lacked the authority to promulgate regulations restricting smoking and that local regulation was, in any event, preempted by the MCIAA. We disagree.

### A. STANDARD OF REVIEW

Resolution of the questions presented on appeal requires the interpretation of statutes, which is a question of law that this Court reviews de novo. See *Michigan Coalition for Responsible Gun Owners v Ferndale*, 256 Mich App 401, 405; 662 NW2d 864 (2003). When interpreting a statute, this Court's goal is to ascertain and give effect to the intent of the Legislature by applying the plain language of the statute. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003).

### B. OVERVIEW OF THE MICHIGAN CLEAN INDOOR AIR ACT

The MCIAA, enacted in 1986 as Part 126 of the PHC,[3] prohibits smoking "in a public place or at a meeting of a public body, except in a designated smoking area." MCL 333.12603. Although seemingly broad in scope, "public place," as defined by the MCIAA, renders the act inapplicable to most private-sector workplaces and public areas that are not themselves enclosed. See MCL

---

[3] See 1986 PA 198, effective January 1, 1987.

333.12601(m).[4] Also exempt from the requirements of the act are food service establishments,[5] MCL 333.12603(3), private educational facilities "after regularly scheduled school hours," MCL 333.12603(4), and enclosed private rooms or offices occupied exclusively by a smoker, "even if the room or enclosed office may be visited by a nonsmoker," MCL 333.12601(2). Further, the MCIAA expressly does not apply to "a room, hall, or building used for a private function if the seating arrangements are under the control of the sponsor of the function and not under the control of the state or local government agency or the person who owns or operates the room, hall, or building." MCL 333.12603(2).

In all other public places in which smoking is not "prohibited by law," the MCIAA permits a "person who owns or operates a public place" to designate a smoking area. MCL 333.12605(1).[6] In those public places in which

---

[4] MCL 333.12601(m)(*i*) defines "public place" as

> [a]n enclosed, indoor area owned or operated by a state or local governmental agency and used by the general public or serving as a place of work for public employees or a meeting place for a public body, including an office, educational facility, home for the aged, nursing home, county medical care facility, hospice, hospital long-term care unit, auditorium, arena, meeting room, or public conveyance.

Enclosed indoor areas that are not owned or operated by a state or local governmental unit, but are included in the definition of "public place" if used by the general public, include educational facilities, homes for the aged, nursing homes, county medical care facilities, hospices, hospital long-term care units, auditoriums, arenas, theaters, museums, concert halls, and "[a]ny other facility during the period of its use for a performance or exhibit of the arts." MCL 333.12601(m)(*ii*)(A)-(H).

[5] As discussed *infra*, smoking in food service establishments is nonetheless regulated under Part 129 of the PHC, MCL 333.12905 *et seq.*

[6] Note, however, that the MCIAA places slightly more stringent requirements on two types of facilities: child care and health facilities. In

an owner or operator elects to designate a smoking area, the act requires that "existing physical barriers and ventilation systems shall be used to minimize the toxic effect of smoke in both smoking and adjacent nonsmoking areas." MCL 333.12605(1).[7] The act further requires that seating within the public place be arranged "to provide, as nearly as practicable, a smoke-free area," MCL 333.12607(b), and that the owner or operator develop, implement, and enforce "a written policy for the separation of smokers and nonsmokers which provides, at a minimum," for a procedure to receive, investigate, and take action on complaints, and that ensures that nonsmokers will be located closest to the source of fresh air and that special consideration will be given to individuals with a hypersensitivity to tobacco smoke, MCL 333.12605(3); see also MCL 333.12607(c).

### C. AUTHORITY OF THE NMCHA TO PROMULGATE SMOKING REGULATIONS

In challenging the validity of the regulation promulgated by the NMCHA, plaintiffs assert that nothing in Part 126 of the PHC authorizes a local health depart-

---

child care facilities or on property under the control of a child care facility, smoking is completely prohibited. MCL 333.12604. In health facilities, smoking is allowed only in a designated area that is "enclosed and ventilated or otherwise constructed to ensure a smoke free environment in patient care and common areas." MCL 333.12604a(2)(b). Further, in a health facility, patients may smoke only if a "prohibition on smoking would be detrimental to the patient's treatment as defined by medical conditions identified by the collective health facility medical staff." MCL 333.12604a(2)(a). Patients who are permitted to smoke must, however, be in a separate room from nonsmoking patients. *Id.*

[7] However, "[i]n the case of a public place consisting of a single room, the state or governmental agency or person who owns or operates the single room" is considered to be in compliance with the act "if 1/2 of the room is reserved and posted as a no smoking area." MCL 333.12605(2).

ment to enforce or augment the smoking restrictions set by the MCIAA.[8] Plaintiffs argue that, pursuant to MCL 333.12613, implementation and enforcement of the act and rules promulgated thereunder is a power within the exclusive province of the Michigan Department of Community Health. Plaintiffs' argument in this regard, however, is not sustained by the plain language of § 12613(2) of Part 126, which expressly provides that "the department may authorize a local health department to enforce this part and the rules promulgated under this part." MCL 333.12613(2).

Moreover, even if the responsibility for the implementation and enforcement of the restrictions established by Part 126 had been exclusively granted to the Department of Community Health, that would not, by itself, deny a local health department the authority to promulgate, implement, and enforce similar regulations of its own making. As previously noted, Part 24 of the PHC authorizes the creation of local health departments such as the NMCHA. See MCL 333.2415 and 333.2421. Pursuant to § 2433 of Part 24, such departments are charged with the duty to

> continually and diligently endeavor to prevent disease, prolong life, and promote the public health through organized programs, including prevention and control of envi-

---

[8] Although the trial court's failure to address the authority of the NMCHA to promulgate the regulation at issue renders the issue unpreserved for review on appeal, *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999), this Court may review an unpreserved issue if it is one of law and the facts necessary for resolution of the issue have been presented, *Adam v Sylvan Glynn Golf Course*, 197 Mich App 95, 98-99; 494 NW2d 791 (1992). As presented both below and on appeal, the question whether the NMCHA is authorized to develop regulations restricting smoking presents an issue of statutory interpretation, which is a question of law for which the facts necessary for its resolution are sufficiently present to permit this Court's review. See *Michigan Coalition, supra* at 405.

ronmental health hazards; prevention and control of diseases; prevention and control of health problems of particularly vulnerable population groups; development of health care facilities and health services delivery systems; and regulation of health care facilities and health services delivery systems to the extent provided by law. [MCL 333.2433(1).]

The regulation at issue is consistent with these duties and is authorized to be promulgated by the NMCHA under §§ 2435 and 2441 of Part 24, which provide that a local health department may "[a]dopt regulations to properly safeguard the public health," MCL 333.2435(d), or regulations that "are necessary or appropriate to implement or carry out the duties or functions vested by law in the local health department," MCL 333.2441(1). See also MCL 333.2433(2)(a) (which provides that a local health department "shall . . . [i]mplement and enforce laws for which responsibility is vested in the local health department"). As argued by defendants, the only limitation placed by the Legislature on the promulgation and adoption of such regulations is that they "be at least as stringent as the standard established by state law applicable to the same or similar subject matter." MCL 333.2441(1).[9] The regulation at issue here, being more restrictive than the standards set by the MCIAA, meets this requirement.

We recognize plaintiffs' argument that, under a plain reading of § 2433(1), the fulfillment of the duties im-

---

[9] Unlike Part 24 of the PHC, the regulatory enabling statute at issue in *DABE, Inc v Toledo-Lucas Co Bd of Health*, 96 Ohio St 3d 250; 773 NE2d 536 (2002), does not contain a similar statement evincing a legislative intent to permit coequal regulation of the public health by a local health department. Thus, we reject plaintiffs' reliance on that case as support for their assertion that the NMCHA was without authority to promulgate the regulation at issue in this case.

posed by that section on local health departments is arguably limited to the institution of programs. The section must, however, be read in context and in light of the purpose of both Part 24 and the PHC in general. See *Macomb Co Prosecuting Attorney v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001). As noted earlier, MCL 333.2435(d) expressly grants a local health department authority to "[a]dopt regulations to properly safeguard the public health." Plaintiffs assert that the Legislature has also granted local health departments more specific powers.[10] However, that does not lessen the general duty and authority of those agencies to protect the public health, MCL 333.2433(1), and to adopt and implement regulations for that purpose, MCL 333.2435(d) and 333.2441(1). In fact, the preliminary provisions of the PHC require that the code and each of its various parts "be liberally construed for the protection of the health, safety, and welfare of the people of this state." MCL 333.1111(2); see also MCL 333.2401(2) (stating that the "general definitions and principles of construction" contained in article 1 of the PHC, MCL 333.1101 *et seq.*, are "applicable to all articles in this code"), and *Frens Orchards, Inc v Dayton Twp Bd*, 253 Mich App 129, 134-135; 654 NW2d 346 (2002) (applying the preliminary provisions of the PHC to Part 124 of the code, regulating agricultural labor camps). Because, when so construed, the provisions of Part 24 evince a legislative intent to permit regulation of the kind at issue here, we reject plaintiffs' assertion that the NMCHA was without authority to promulgate the regulation.

---

[10] See, e.g., MCL 333.2455, which permits a local health department to "issue an order to avoid, correct, or remove . . . a building or condition which violates health laws or which the local health officer . . . reasonably believes to be a nuisance, unsanitary condition, or cause of illness."

### D. PREEMPTION

Plaintiffs also argue that the regulation at issue is preempted by the MCIAA and that the regulation is therefore invalid regardless of whether the NMCHA was authorized to promulgate the regulation. Again, we disagree.

State law preempts regulation by an inferior level of government[11] in two situations: (1) where the local regulation directly conflicts with a state statute, or (2) where the statute completely occupies the field that the local regulation attempts to regulate. See *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 257; 566 NW2d 514 (1997). Plaintiffs challenge the NMCHA smoking regulation on both grounds.

### 1. DIRECT CONFLICT

For purposes of preemption, a direct conflict exists between a local regulation and a state statute when the local regulation permits what the statute prohibits or prohibits what the statute permits. *People v Llewellyn*, 401 Mich 314, 322 n 4; 257 NW2d 902 (1977). Here, in challenging the validity of the NMCHA regulation by claiming that it is in conflict with the MCIAA, plaintiffs assert that § 12605 of the act grants owners and operators of public places the discretion to choose whether to maintain a smoking section or remain smoke-free, and

---

[11] Although most often applied to attempts by a county, township, or municipality to regulate by ordinance, there is no reason why the general principles underlying the preemption doctrine should not apply with equal force when any inferior level of government attempts to regulate the same subject as a higher level of government. Thus, although we deal here with a regulation promulgated by a local administrative agency, application of the principles developed in determining the validity of local ordinances in light of statutory enactments on the same or similar subject matter is appropriate.

thereby confers a statutory right impermissibly nullified by the regulation. See MCL 333.12605(1). Plaintiffs further argue that where the owner or operator of a public place chooses to exercise this right by designating a smoking area, § 12605 of the MCIAA requires only that existing physical barriers and ventilation be used to minimize the toxic effects of smoking. Thus, plaintiffs argue, by requiring that smoking be restricted to a separate enclosed area with independent ventilation, the regulation further conflicts with the MCIAA and must be found to be invalid. However, plaintiffs' interpretation of § 12605 disregards its plain language.

With respect to designation of a smoking area, § 12605(1) of the MCIAA provides:

> A smoking area may be designated by the state or local governmental agency or the person who owns or operates a public place, except in a public place in which smoking is prohibited by law. If a smoking area is designated, existing physical barriers and ventilation systems shall be used to minimize the toxic effect of smoke in both smoking and adjacent nonsmoking areas. [MCL 333.12605(1).]

As argued by defendants, a plain reading of the statute indicates that exercise of the discretion to designate a smoking area afforded by § 12605(1) is expressly excepted from those public places "in which smoking is prohibited by law." This Court has previously recognized that "[t]he term 'law' may include those principles promulgated in constitutional provisions, common law, and *regulations* as well as statutes." *Vagts v Perry Drug Stores, Inc*, 204 Mich App 481, 485; 516 NW2d 102 (1994) (emphasis added). That the Legislature intended the regulations of a local health department to have such force and effect is supported by § 2441 of the PHC, which states that the "[r]egula-

tions of a local health department supersede inconsistent or conflicting local ordinances," MCL 333.2441(1), and renders violation of a local health department regulation "a misdemeanor, punishable by imprisonment for not more than 90 days, or a fine of not more than $200.00, or both," MCL 333.2441(2). Thus, contrary to plaintiffs assertion, the regulation does not prohibit what the MCIAA permits. *Llewelyn, supra* at 322 n 4. Accordingly, there is no conflict between the two regulatory schemes.[12]

### 2. EXCLUSIVE OCCUPATION

As noted, however, regulation of smoking by the NMCHA is nonetheless precluded if the state statutory scheme preempts the regulation by occupying the field of regulation to the exclusion of local regulation. *Id.* In *Llewelyn, supra* at 323-325, our Supreme Court set forth the following four guidelines for determining whether a state statute so occupies a field of regulation that local regulation by inferior levels of government is preemptively precluded:

---

[12] In reaching this conclusion, we find plaintiffs' reliance on *Entertainment Industry Coalition v Tacoma-Pierce Co Health Dep't*, 153 Wash 2d 657; 105 P3d 985 (2005), to be misplaced. The Washington statute at issue in that case does not contain the exception for public places "in which smoking is prohibited by law" found in § 12605 of the PHC. See RCW 70.160.040(1). Furthermore, unlike the NMCHA regulation, the local health department regulation at issue in that case prohibited smoking "in all indoor public places," including those expressly exempt from regulation under the Washington statute and in which the statute permitted the designation of a smoking area. See *Entertainment Industry Coalition, supra* at 662-664. As already discussed, although the smoking-area standards established by the NMCHA regulation are more stringent than those required by the MCIAA, the regulation does not prohibit the designation of such areas. Moreover, the NMCHA regulation expressly does not apply to those areas exempt from regulation by the MCIAA.

First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted.

Second, pre-emption of a field of regulation may be implied upon an examination of legislative history.

Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.

Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest.

As to this last point, examination of relevant Michigan cases indicates that where the nature of the regulated subject matter calls for regulation adapted to local conditions, and the local regulation does not interfere with the state regulatory scheme, supplementary local regulation has generally been upheld.

However, where the Court has found that the nature of the subject matter regulated called for a uniform state regulatory scheme, supplementary local regulation has been held pre-empted. [Citations omitted.]

With regard to application of these guidelines to the regulatory schemes at bar, plaintiffs correctly do not assert that the MCIAA expressly preempts local regulation of smoking. Indeed, there is nothing in the provisions of Part 126 to support such an assertion. To the contrary, by excepting those public places "in which smoking is prohibited by law" from the right of an owner or operator of a public place to designate a smoking area, the Legislature has left open the possibility of additional regulation by inferior levels of government, including local health departments. MCL 333.12605(1).

Plaintiffs also do not argue that preemption is implied by the legislative history of the MCIAA. However, we find guidance in the history of the MCIAA and its place within the PHC. The legislative declaration accompanying the enactment of the MCIAA contains no expression of a need for uniform statewide control of smoking. See the title of 1986 PA 198.[13] Furthermore, the inclusion of a specific, limited preemption provision in Part 129 of the PHC supports a conclusion that the later-enacted MCIAA has no implied general preemptive effect.[14] As recognized by this Court in *Marquette, supra* at 68-69, Part 129 of the PHC contains an express preemption provision giving preclusive effect to MCL 333.12905, governing smoking in food service establishments. See MCL 333.12915.[15] It is well settled that statutes that relate to the same subject or share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates. *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998). Under this principle of statutory construction, and in the absence of any express preclusion, the inference to be drawn from the Legislature's having given preclusive effect to Part 129 of the PHC is a concomitant intention not to give preclusive effect to Part 126. See, e.g., *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993) (the omission of

---

[13] "Although a preamble [sic: title] is not to be considered authority for construing an act, it is useful for interpreting its purpose and scope." *Malcolm v East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991).

[14] The language preempting local regulation of smoking in food service establishments was added to § 12915 by 1982 PA 526, which became effective March 30, 1983. As previously noted, the MCIAA was added as Part 126 of the PHC by 1986 PA 198, effective January 1, 1987.

[15] Section 1008 of the NMCHA regulation expressly exempts from its purview the regulation of smoking in food service establishments.

a provision in one part of a statute that is included in another part should be construed as intentional).

Moreover, contrary to plaintiffs' assertion, the scheme of smoking regulation established by Part 126 of the PHC is not so broad and detailed in scope as to require a determination that it has precluded all local regulation in that area. Although the MCIAA sets specific requirements for the designation of smoking areas, those requirements are not all-encompassing. To the contrary, the MCIAA expressly addresses many of its requirements as "minimums," see MCL 333.12605(3) and 333.12607, to be employed "to provide, as nearly as practicable, a smoke-free area," MCL 333.12607(b). Further, as noted earlier, although seemingly broad in scope, the definition of "public place" provided by the MCIAA renders the act inapplicable to most private-sector workplaces and public areas that are not themselves enclosed. MCL 333.12601(m).

With regard to the final guideline set forth by the Court in *Llewelyn*, plaintiffs rely on this Court's decision in *Marquette*, *supra*, for the proposition that the regulation of smoking is a statewide issue better left to uniform regulation by the Legislature. However, we agree with defendants that the majority's statement that "[s]moking is a statewide issue that is not local in character" is merely dictum and, therefore, does not constitute binding precedent under MCR 7.215(J)(1).[16] *Marquette*, *supra* at 67; see also *Dessart v Burak*, 252 Mich App 490, 496; 652 NW2d 669 (2002). Indeed, as argued by defendants, the majority's conclusion that

---

[16] In *Carr v Lansing*, 259 Mich App 376, 383-384; 674 NW2d 168 (2003), this Court noted that dictum is "a judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)." (Citations and internal quotation marks omitted).

the common-law doctrine of preemption applied for this reason to preempt the municipal ordinance at issue in that case was unnecessary given the Court's acknowledgment of the expressly preclusive effect of MCL 333.12915. *Marquette, supra* at 68-69.

Nonetheless, we agree with the majority in *Marquette, supra* at 67, that smoking is inherently an issue of statewide concern that does not necessarily call for regulation adapted to local conditions. Again, however, there is nothing in the legislative declaration accompanying the enactment of the MCIAA to indicate legislative concern for statewide, uniform regulation of that subject matter. To the contrary, and as already discussed, the MCIAA, as enacted by the Legislature, allows for local regulation in this area. Under such circumstances, we conclude that the statewide nature of the subject matter of the NMCHA regulation does not support preemption.

### E. EMPLOYMENT AT WILL

Finally, plaintiffs argue that because the regulation's provision that an employer cannot discharge, refuse to hire, or otherwise retaliate against a person for exercising his or her right to a smoke-free environment adversely affects the common-law right of an employer to discharge an employee at will, the NMCHA regulation violates public policy and is therefore void. Again, we disagree.

Plaintiffs correctly argue that, in the absence of a contract providing to the contrary, employment is usually terminable by the employer or the employee at any time, for any or no reason whatsoever. *Suchodolski v Michigan Consolidated Gas Co*, 412 Mich 692, 694-695; 316 NW2d 710 (1982). It is well settled, however, that an employer is not free to discharge an employee at will

when the reason for the discharge contravenes public policy. See *id.* at 695.

In *Suchodolski, supra* at 695-696, our Supreme Court provided three examples of public-policy exceptions to an employer's right to discharge an at-will employee under the employment at will doctrine. An at-will employee's discharge violates public policy if any one of the following occurs: (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment. *Id.*

Although not itself a legislative enactment or statement, the regulation at issue here provides employees with certain specified rights and was, as required by MCL 333.2441(1), approved for application by the governing bodies of each of the various counties served by the NMCHA.[17] Given these facts, and considering the public policy of minimizing the effects of smoking evinced by the Legislature through its enactment of Part 126 and § 12905 of Part 129 of the PHC, the regulation's restriction of the general right to discharge an employee at will is consistent with the exceptions to that doctrine set forth in *Suchodolski*. Accordingly, we reject plaintiffs' claim that the regulation's prohibition in this regard itself violates public policy and is therefore void.

Affirmed.

---

[17] MCL 333.2441(1) provides, in relevant part, that regulations adopted by a local health agency "shall be approved or disapproved by the local governing entity."