# STATE OF MICHIGAN

# COURT OF APPEALS

DENISE M. KOETS and SCOTT A. KOETS,

Plaintiffs-Appellants,

v

THE AMERICAN LEGION, DEPARTMENT OF
MICHIGAN

Defendant-Appellee.

UNPUBLISHED
August 8, 2017

No. 333347
Ingham Circuit Court
LC No. 15-000010-CD

Before: CAVANAGH, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Plaintiffs appeal as of right the summary dismissal of their claims against defendant, including a claim of retaliatory discharge under the Whistleblower Protection Act (WPA), MCL 33315.361 *et seq*., arising from the termination of employment. We affirm.

Defendant is a non-profit organization that provides services to veterans, including assisting veterans with applying for various benefits from the U.S. Department of Veterans Affairs (VA). In January 2011, plaintiff Denise Koets (plaintiff) was hired by defendant as a Financial Administrative Assistant and Human Resources Administrator. In that capacity, she was to perform confidential administrative, bookkeeping, and human resources functions in support of defendant's Adjutant, Patrick Lafferty. Some of her job duties included the daily banking, processing travel vouchers for reimbursement, performing functions for and attending executive meetings, maintaining employee files, overseeing membership events like the yearly raffle, and assisting in any audit coordination and administration.

In March 2012, plaintiff's husband, Scott Koets, applied for disability benefits from the VA with defendant's assistance. By September 2012, he still had received no correspondence regarding the status of his claim. During plaintiff's efforts to determine the status of her husband's claim, plaintiff allegedly discovered that defendant's Veterans Affairs and Rehabilitation (VA&R) division was mishandling veterans' claims by losing them and causing veterans to miss out on benefits. Plaintiff reported the mishandling of her husband's claim, as well as the mishandling of other claims in general, to several of defendant's high-level employees, including Lafferty, the VA&R Director, the Public Relations Director, defendant's State Commander, and a chairman of defendant's Finance Committee. In November 2012, plaintiff discovered that her husband's application for benefits was never submitted to the VA

-1-

and, in December 2012, defendant finally submitted her husband's claim. By November 2013, the VA approved his claim but, while the VA backdated his benefits to the December 2012 application date, plaintiff's husband lost nine months of disability pay benefits.

In April 2013, plaintiff received an excellent work performance review. However, according to Lafferty, a few months after the VA approved plaintiff's husband's claim, plaintiff's work performance began to deteriorate. In particular, plaintiff was not depositing daily accounts correctly and chairmen were complaining to Lafferty. Plaintiff also complained that she was overwhelmed with her job duties, but her workload had not changed. Plaintiff became increasingly isolated from coworkers, who complained about her. For example, Lafferty, who was slated to retire, received an email warning against correspondence going to plaintiff concerning Lafferty's job because plaintiff was the "least confidential," was a "sneaky employee," and the "biggest problem in this office." Lafferty testified that he spoke to plaintiff about the issues with her job duties as they arose, but the problems persisted.

In May 2014, plaintiff's husband's attorney sent defendant a demand letter requesting that defendant compensate him for the disability benefits he lost as a result of defendant failing to file his original application. According to plaintiff, she was ousted from executive committee meetings without reason as soon as defendant received the demand letter. However, a reprimand letter in plaintiff's personnel file indicates that she was excluded from these meetings starting in June because defendant believed plaintiff was "talking openly to Legion employees concerning the actions of the Finance Committee in executive sessions."

In June 2014, plaintiff was responsible for compiling financial packets for defendant's summer state convention. Two versions of the packets were to be created: one for defendant's Finance Committee containing confidential budgetary information, including employee salaries, and the other containing no such information for defendant's general membership. However, plaintiff switched the packets and the general membership received the packets containing the confidential information. As a result of plaintiff's mistake, according to Lafferty, he received numerous emails from various employees complaining about her breach of confidentiality and requesting her immediate termination.

Meanwhile, plaintiff continued to make complaints about defendant's mishandling of veterans' claims and the misuse of defendant's funding. For example, sometime after July 2014, plaintiff apparently complained to the new VA&R director that defendant was mismanaging veterans' claims. She also told the Grant Administrator of the Michigan Veterans Affairs Agency (MVAA) that defendant was mishandling both veterans' claims and funding monies. Apparently, around the same time, plaintiff brought the misuse of funds issue to Lafferty's attention, as well as to the attention of defendant's outside auditor.

Shortly after defendant's summer state convention, on July 21, 2014, defendant issued plaintiff a negative written performance review detailing her shortcomings, including her repeated accounting mistakes, poor time management, and unwillingness to work with coworkers. Plaintiff also received a reprimand letter placing her on probation. The letter referred to plaintiff's breach of confidentiality which resulted in her exclusion from the executive sessions of the Finance Committee and plaintiff's release of confidential employee salary information to defendant's general members at the summer state convention. Defendant

considered this breach to be a lack of judgment and a total failure of plaintiff's job responsibilities. The letter further noted the complaints received from defendant's employees, chairmen, and members with respect to attempts to secure financial assistance from plaintiff.

On August 29, 2014, Roland Runyan replaced Lafferty as Adjutant. According to Runyan, he almost immediately experienced problems with plaintiff's work performance. For example, Runyan found that plaintiff could not accurately answer questions regarding budgeted items that were part of her job duties; she was incorrectly allocating money and vouchers; and she sent defendant's financial information to the IRS for an audit in an untimely and unsecure fashion, i.e., a CD-ROM via US mail. Subsequently, at a meeting of defendant's Finance and Personnel Committee held on September 25, 2014, Runyan recommended that the Committee dismiss plaintiff from her employment. The meeting minutes stated:

> [Plaintiff] continues to be difficult to manage. She doesn't get along well with co-workers. Her financial abilities seem limited. She continually causes problems with the staff. Department's finance and payroll could function okay without [plaintiff] present. . . . Ron Runyan stated that he can't seem to get efficient answers from [plaintiff] regarding financial issues. . . . A motion was made . . . to release [plaintiff] from employment because of inadequate performance of her duties. The motion passed.

The meeting minutes also noted that plaintiff's husband's claim had been settled.

Plaintiff was not immediately informed of defendant's termination decision. Instead, on September 27, 2014, she attended defendant's fall state convention where a raffle was conducted as part of the events. Per her job duties, plaintiff was to administer the raffle by pulling the prize numbers from the raffle drum and recording the winners. Plaintiff, however, locked the raffle drum and left before the raffle concluded, taking with her the master sheet on which she had recorded the winners although several coworkers told her that the raffle was not finished. Unable to complete the raffle, Lafferty and Runyan attempted to contact plaintiff via phone. When they were unsuccessful, Lafferty and Runyan went to plaintiff's hotel to retrieve plaintiff, who then returned and completed the raffle in accordance with state law.

Thereafter, on October 1, 2014, Runyan placed plaintiff on administrative leave and she was given written documentation regarding the failures that had occurred during his tenure. On October 8, while plaintiff was on leave, Runyan discovered over $70,000 in checks unsecured in plaintiff's desk. Contrary to plaintiff's job duties which required daily deposits, these checks dated back a month. On October 10, Runyan formally terminated plaintiff's employment.

On January 7, 2015, plaintiff and her husband filed a four-count complaint alleging (1) retaliatory discharge in violation of the WPA; (2) retaliation in violation of public policy; (3) termination without just cause in violation of public policy; and (4) loss of consortium. The complaint alleged that plaintiff was disciplined and subsequently terminated from employment because of her husband's compensation claim, and also because plaintiff had reported defendant's mishandling of veterans' claims and misuse of funding.

In November 2015, defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Defendant argued that the WPA claim should be dismissed because plaintiff did not

engage in protected activity and there was no evidence of any nexus between plaintiff's termination and her alleged protected activity. Instead, defendant argued, the evidence established that plaintiff was terminated because of a deterioration of work performance. And because plaintiff's husband's consortium claim was derivative of the WPA claim, it must also be dismissed. Further, defendant argued, because the WPA was plaintiff's exclusive remedy, the public policy claims were barred and must be dismissed.

Plaintiffs responded by asserting that the evidence showed that plaintiff had repeatedly engaged in protected activity by telling management about problems related to the processing of veterans' claims and by reporting defendant's misuse of grant funds. Plaintiffs further argued that defendant's reasons for firing plaintiff were pretextual, as demonstrated by the suddenly poor performance reviews, Runyan's decision to terminate her employment based on after-acquired evidence (the undeposited checks), and defendant's failure to follow the basics of assessing discipline. Plaintiffs also countered that the WPA was not plaintiff's exclusive remedy thus her public policy claims should survive summary disposition, and that the evidence supported plaintiff's husband's loss of consortium claim.

At the hearing on the motion, the circuit court sua sponte raised the issue whether plaintiffs had a cognizable claim under the First Amendment, wherein a victim of retaliation may bring suit for the protected activity of his or her spouse. The court, thus, framed the issue as whether plaintiff's husband's demand letter threatening legal action was protected activity as to plaintiff. The court reasoned: "Case law has been broadened to permit the situation by establishing a right by association with spouses and subsequent retaliation, and that is exactly the situation I find here." In regard to causation, the circuit court found that the adverse employment actions occurred after defendant received the demand letter and that defendant made the decision to terminate plaintiff at the same meeting it noted that plaintiff's husband's claim was settled. Thus, the circuit court denied summary disposition as to plaintiff's WPA claim, finding that a genuine issue of material fact existed. And because plaintiff's husband's loss of consortium claim was derivative of plaintiff's WPA claim, it was not dismissed. The circuit court did dismiss plaintiff's public policy claims, holding that the WPA provided the exclusive remedy for plaintiff's alleged injury. The court then entered an order granting in part and denying in part defendant's motion for summary disposition.

Defendant moved for reconsideration, arguing that the circuit court committed palpable error by denying the motion based on a legal theory that was neither pleaded nor argued. Defendant pointed out that no precedent holds that the First Amendment can be used to satisfy the "protected activity" element of a WPA claim.

The circuit court took no action with regard to further briefing or oral argument on the motion for reconsideration and plaintiff took no action in relation to the motion. Then, nearly two months after defendant filed its motion, the circuit court entered an order granting the motion and dismissing all of plaintiffs' claims. The circuit court reasoned that, as defendant argued, the First Amendment was inapplicable because it was neither pleaded nor raised. And under the plain language of MCL 15.362, plaintiff's husband's demand letter could not be attributed to plaintiff to satisfy the protected activity element under the WPA. Further, the court held, even if plaintiff engaged in protected activity when she reported the mishandling of veterans' claims, plaintiff failed to establish that her termination was causally connected to her

protected activity. The court noted our Supreme Court's decision in *West v General Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003), that to prove causation in a WPA claim the plaintiff "must show something more than merely a coincidence in time between protected activity and adverse employment action." And, here, plaintiff failed to show either by direct evidence or by inference that defendant considered plaintiff's reports regarding the mishandling of veterans' claims in its decision to terminate her employment. To the contrary, defendant showed by substantial evidence that plaintiff's work performance was poor as early as April 2014, long before defendant's September meeting at which time the decision was made to terminate her. Thus, the circuit court concluded that it made a palpable error when it denied defendant's motion for summary disposition regarding plaintiff's WPA claim pursuant to MCR 2.116(C)(10). Accordingly, plaintiff's husband's loss of consortium claim was also dismissed. Plaintiffs now appeal.

Plaintiffs argue that the claim of retaliatory discharge under the WPA should not have been dismissed because a question of fact existed on the issue of causation, i.e. whether a causal nexus existed between plaintiff's termination and her protected activity. We disagree.

This Court reviews de novo a circuit court's decision on a motion for summary disposition. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013). A motion brought under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Spiek v Dept of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). The moving party must identify the matters that have no disputed factual issues, and has the initial burden of supporting its position with documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The party opposing the motion must then establish by evidentiary materials that a genuine issue of disputed fact exists. *Id*. After considering the documentary evidence submitted in the light most favorable to the nonmoving party, the court determines whether a genuine issue of material fact exists to warrant a trial. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

The WPA establishes "a cause of action for an employee who has suffered an adverse employment action for reporting or being about to report a violation or suspected violation of the law." *Whitman v City of Burton*, 493 Mich 303, 312; 831 NW2d 223 (2013); see also MCL 15.362. A plaintiff may establish a violation of the WPA through direct or indirect evidence. *Debano-Griffin*, 493 Mich at 176. If direct evidence of retaliatory discharge exists, then the plaintiff's burden of proof is like that of any other civil case. *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). In the absence of direct evidence of unlawful retaliation, a plaintiff must rely on the *McDonnell Douglas*[1] burden-shifting framework to establish a prima facie case of retaliatory discharge by inference from the proofs. *Debano-Griffin*, 493 Mich at 175-176; *Hazle*, 464 Mich at 462-463.

On appeal, plaintiffs initially argue that direct evidence of unlawful retaliation exists. Specifically, plaintiffs point to the September 25, 2014 meeting minutes where the settlement for plaintiff's husband's claim was mentioned, followed by a discussion of plaintiff's poor

---

[1] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

performance and subsequent vote to terminate her employment. "Direct evidence" is defined as "evidence which, if believed, requires the conclusion that unlawful [retaliation] was at least a motivating factor in the employer's actions." *Id*. at 462 (quotation marks and citations omitted).

Here, no reasonable conclusion can be drawn from the September meeting minutes that plaintiff's termination was the result of unlawful retaliation for plaintiff's protected activity. First, the fact that plaintiff's husband had reached a settlement with defendant as to his benefits claim—which was discussed in the same meeting as plaintiff's future employment with defendant—is irrelevant to the legality of plaintiff's termination under the WPA. Under the WPA,

> [a]n employer shall not discharge . . . an employee . . . because the employee, *or a person acting on behalf of the employee*, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law . . . . [MCL 15.362 (emphasis added).]

Thus, for a WPA claim to be cognizable, the employer's adverse action must be because of either the employee's protected activity or the activity of another person who is acting on behalf of that employee. And, here, plaintiff's husband's demand letter related to defendant's alleged mishandling of his benefit claim which caused him to suffer damages and made no reference to plaintiff or plaintiff's employment. Thus, these actions cannot be attributed to plaintiff as "protected activity" and defendant's discussion of this matter at the same meeting it decided to terminate plaintiff is not direct evidence of unlawful retaliatory discharge.

Second, the September meeting minutes otherwise make no reference to any type of protected activity that plaintiff may have engaged in; nor do the minutes reveal any type of retaliatory animus as to plaintiff that may have motivated plaintiff's termination. Instead, the meeting minutes reference plaintiff's deteriorating performance and show that members agreed to her termination for that reason. And, while the executive committee's notation that plaintiff's husband's claim had been settled may create a suspicion of retaliation, this suspicious circumstance creates nothing more than speculation as to the reason for plaintiff's termination. See *Skinner v Square D Co*, 445 Mich 153, 164-167; 516 NW2d 475 (1994). The meeting minutes, in themselves, do not create a reasonable inference of retaliation, nor do they require a conclusion that defendant's decision to terminate plaintiff's employment was motivated by retaliation for plaintiff's protected activity. Therefore, plaintiffs' claim that direct evidence of unlawful retaliatory discharge exists to preclude summary disposition is without merit.

Absent direct evidence of unlawful retaliation, plaintiffs were required to establish a prima facie case of retaliation under *McDonnell Douglas*. In cases for unlawful retaliatory discharge under MCL 15.362 that rely on indirect evidence, a plaintiff establishes a prima facie case by showing that "(1) the plaintiff was engaged in protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *West*, 469 Mich at 183-184 (footnote omitted). In the event a plaintiff makes this showing, then the burden shifts to the defendant to show that it had a legitimate non-retaliatory reason for the adverse employment action. *Debano-Griffin*, 493 Mich at 176. If the employer makes this showing, so as to rebut the presumption of retaliation created by the plaintiff's prima facie showing, then a plaintiff's claim

may still survive summary disposition if the plaintiff can show that the proffered legitimate reason for the adverse employment action was a pretext for unlawful retaliatory action. *Hazle*, 464 Mich at 465-466.

Plaintiffs argue that a genuine issue of material fact exists as to whether defendant violated the WPA because plaintiff made numerous reports regarding defendant's mishandling of veterans' claims and misuse of funds, and because she received stellar performance reviews before these reports and allegedly unsupported poor performance reviews after making these reports.[2] However, a review of the record indicates that no evidence exists from which a reasonable juror could conclude that defendant terminated plaintiff *because* she engaged in protected activity. To establish the requisite level of causation, it is not enough to simply show that the employee engaged in protected activity; rather, a plaintiff must show that the adverse action was somehow influenced by the protected activity. *West*, 469 Mich at 187. Moreover, a temporal connection between the protected activity and the adverse action, while some evidence of unlawful action, is not enough to support a conclusion that the adverse action occurred because the plaintiff engaged in protected activity. *Id*. at 186-187.

Here, the record shows that plaintiff engaged in protected activity by making reports of defendant's mishandling of veteran claims starting in late 2012 to Lafferty, the VA&R Director, defendant's State Commander, the Public Relations Director, the Chairman of the Finance Committee, and numerous Service Directors.[3] Although the record is unclear as to the continued duration of plaintiff's reports, it does demonstrate the plaintiff renewed her complaints as late as July 2014 when she told the Grant Administrator of the MVAA and the new VA&R Director that claims were being mishandled. Around the same time, she also informed Lafferty of suspected fraudulent use of defendant's funds. Then, in October 2014, plaintiff's employment was terminated. Viewing the record most favorably to plaintiff, a temporal connection may exist between her protected activity and the termination of her employment.

As noted, however, a temporal connection alone is not enough to establish causation. *Id.* And, when the admissible record evidence is viewed most favorably to plaintiff, there is no other evidence of causation showing that her termination was somehow related to the protected activity. There is no evidence, for example, that any of the individuals to which plaintiff made reports demonstrated a clear displeasure with the report. That plaintiff often received no

---

[2] Plaintiff's argument in this regard relates mainly to causation and pretext. Plaintiff's discussion of whether defendant is a "public body" and whether she engaged in protected activity is mostly irrelevant, as there is no dispute that plaintiff is a public body and defendant does not appear to contest that plaintiff engaged in protected activity.

[3] Plaintiff also notes that she made reports to the MVAA and a private auditor. The latter is not protected activity because it was not a report to a public body, but to a private entity. See 15.362. As to the former, there is no evidence that anyone at the defendant employer, let alone Runyan, knew that plaintiff had made a report to the MVAA. Absent such knowledge, there can be no causal connection between plaintiff's report to the MVAA and Runyan's decision to terminate her employment.

response to her complaints is not evidence from which a reasonable juror could conclude that her termination was motivated by plaintiff's complaints of mishandled claims. Perhaps most significantly, however, plaintiff presented no evidence that those in charge of the decision to terminate her employment knew that plaintiff had made any of the reports. See *id*. at 187-188. The record shows that Runyan decided to terminate plaintiff's employment in September 2014. Plaintiff did not report any violations of law to Runyan and there is no evidence showing that any of the individuals to which plaintiff had made reports were part of the decision to terminate her employment or otherwise told Runyan of plaintiff's protected activity. Moreover, even if Runyan had known of plaintiff's protected activity, nothing in the record shows that Runyan took this information into account when deciding to end plaintiff's employment. Instead, the record reflects that Runyan, in deciding to fire plaintiff, considered her unsatisfactory job performance and her failure to rectify her shortcomings.

Notwithstanding the foregoing, plaintiff argues that evidence of a causal connection between her discharge and protected activity is supported by the sudden change in her work evaluations from "stellar" to very poor, which occurred after she reported the mishandling of veterans' claims and were not supported by reference to any objective measures or explanation. However, even viewing the evidence most favorably to plaintiff, it is clear that plaintiff received excellent performance reviews in 2013 after she engaged in protected activity in 2012. And plaintiff's claim that her poor work evaluation in July 2014 had no "objective measures" to support its conclusions is refuted by the evaluation itself. Further, her claim that no explanation for her poor performance was given is also refuted by the testimonies of her supervisors, who testified that they orally addressed issues as they arose, and also by the July 21 reprimand letter explaining to plaintiff how she had breached her job duties. In short, no reasonable juror reviewing plaintiff's performance evaluations could conclude that plaintiff's protected activity was related to either the poor performance review or the ultimate termination of her employment.

In sum, no evidence was presented to support a finding that plaintiff's employment was terminated because she engaged in protected activity; therefore, plaintiffs failed to establish a prima facie case of unlawful termination and the circuit court did not err by granting summary disposition for defendant on this basis. And because plaintiff's WPA claim was properly dismissed, her husband's derivative loss of consortium claim was also properly dismissed.

Next, plaintiffs argue that, even if a claim under the WPA was not established, the claim for retaliation in violation of public policy and for termination without just cause should not have been dismissed. We disagree.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim and may be granted only where the claim alleged is "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992).

"[A]n employer is not free to discharge an employee at will when the reason for the discharge contravenes public policy." *McNeil v Charlevoix Co*, 275 Mich App 686, 703-704; 741 NW2d 27 (2007). "An at-will employee's discharge violates public policy if any one of the following occurs: (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the

employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment." *Id.* at 704.

However, "[a] public policy claim is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue." *Dudewicz v Norris-Schmid, Inc*, 443 Mich 68, 80; 503 NW2d 645 (1993), disapproving on other grounds in *Brown v Mayor of Detroit*, 478 Mich 589, 594 n 2 (2007). Here, the WPA provides plaintiff a cause of action for the reporting of defendant's mishandling of veterans' claims in violation of the law. Consequently, the WPA is plaintiff's exclusive remedy and her public policy claims, based on the same conduct at issue as plaintiff admits, are not sustainable. Although the circuit court erroneously held that the WPA was no longer plaintiff's exclusive remedy, it properly dismissed her public policy claims on the basis that they rested on the same facts as plaintiff's WPA claim. This Court will affirm a lower court's decision even if it reached the correct result for the wrong reason. *Demski v Petlick*, 309 Mich App 404, 441; 873 NW2d 596 (2015).

Finally, plaintiffs argue that they were denied due process when the trial court failed to provide them an opportunity to respond to defendant's motion for reconsideration filed under MCR 2.119(F). We disagree.

The state and federal constitutions guarantee that no person shall be deprived of life, liberty, or property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17. "Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker." *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995).

MCR 2.119(F), which is titled "Motions for Rehearing or Reconsideration," provides:

(1) Unless another rule provides a different procedure for reconsideration of a decision (see, e.g., MCR 2.604[A], 2.612), a motion for rehearing or reconsideration of the decision on a motion must be served and filed not later than 21 days after entry of an order deciding the motion.

(2) No response to the motion may be filed, and there is no oral argument, unless the court otherwise directs.

Pursuant to MCR 2.119(F)(2), the circuit court considered defendant's motion for reconsideration without further briefing or oral argument, which did not violate plaintiffs' due process rights.

First, the court rule does not prohibit the consideration of a response to a motion for reconsideration or oral argument; rather, briefing and oral argument are permitted in the court's discretion under the court rule. Plaintiffs, however, did not move to file a response or make a request for oral argument. Moreover, plaintiffs could have, but did not, move for reconsideration of the circuit court's opinion and order on reconsideration pursuant to MCR 2.119(F)(1), thereby availing themselves of an opportunity to respond to defendant's motion and the court's new order. Instead, plaintiffs filed this appeal. Due process only requires that a litigant be provided a

meaningful opportunity to be heard; that plaintiffs chose not to exercise this opportunity at the circuit court level does not equate to a due process violation.

Second, plaintiffs had a full opportunity to explore the evidence and argue their case before the circuit court at the summary disposition stage, in both briefing and during oral argument. During the hearing, plaintiffs also had an opportunity to respond to defendant's arguments and to gain an understanding of the circuit court's rationale for initially denying the motion. And, although the circuit court initially denied summary disposition based on a novel legal theory neither raised in plaintiffs' complaint nor argued by plaintiffs—and which defendant attacked as palpable error in the motion for reconsideration—plaintiffs did not move to amend their complaint before entry of a final order. See MCR 2.116(I)(5). Because plaintiffs had ample opportunities to argue their case at the summary disposition stage, the circuit court did not deprive plaintiffs of the opportunity to be heard by acting in conformity with MCR 2.119(F)(2).

Affirmed. Defendant is entitled to costs as the prevailing party. See MCR 7.219(A).

/s/ Mark J. Cavanagh
/s/ Michael J. Kelly
/s/ Brock A. Swartzle