**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Marilyn Kelly          Michael F. Cavanagh
                       Elizabeth A. Weaver
                       Maura D. Corrigan
                       Robert P. Young, Jr.
                       Stephen J. Markman
                       Diane M. Hathaway

JULY 21, 2009

KENT A. MCNEIL, FRANKLIN E.
FISHER, and
ROGER GRIFFIN,

       Plaintiffs,

and

SCOTT WAY and JEFF LEGATO,

       Plaintiffs-Appellants,

v                                                    No. 134437

CHARLEVOIX COUNTY and
NORTHWEST MICHIGAN COMMUNITY
HEALTH AGENCY,

       Defendants-Appellees.

BEFORE THE ENTIRE BENCH

WEAVER, J.

At issue in this case is whether MCL 333.2441(1) authorizes a local health department to create, and a county board of commissioners to approve, regulations that control smoking in the workplace. Additionally at issue is whether such a regulation, providing employees with a private cause of action to seek its enforcement, interferes with Michigan's at-will employment doctrine.

## I.  The Court of Appeals Decision

The Court of Appeals concluded that the regulation at issue is authorized by statute and was promulgated in a manner consistent with the statutory requirements.  Furthermore, the Court of Appeals concluded that the private cause of action created by the regulation fits within public policy exceptions to Michigan's at-will employment doctrine.  We agree with the Court of Appeals' conclusions.  In affirming, we adopt as our own the Court of Appeals' opinion, *McNeil v Charlevoix Co*, 275 Mich App 686; 741 NW2d 27 (2007)[1]:

> In this action for declaratory relief, plaintiffs appeal as of right the trial court's order denying their motion for summary disposition.  We affirm.

## I.  Basic Facts and Procedural History

> Defendant Northwest Michigan Community Health Agency (NMCHA) is a multicounty district health department organized by Antrim, Charlevoix, Emmet, and Otsego counties under Part 24 of the Public Health Code (PHC), MCL 333.2401 *et seq*.[1]  In purported furtherance of its duty to protect the public health and welfare in its district, the NMCHA promulgated what it entitled the Public Health Indoor Air Regulation of 2005 (the regulation).  In addition to prohibiting smoking in all public places, the regulation requires employers who do not wholly prohibit smoking at an enclosed place of employment to designate an NMCHA-approved smoking room, which is required by the regulation to be "a separate enclosed area that is independently ventilated so that smoke does not enter other non-smoking areas of the worksite."  The regulation additionally

---

[1] We have eliminated only that portion of the Court of Appeals opinion that addresses the issue of preemption, because we do not believe that a preemption analysis is necessary for the resolution of the issues before us at this time.  We do not disturb the Court of Appeals ruling on that issue.

prohibits an employer from discharging, refusing to hire, or otherwise retaliating against an employee for exercising his or her right to the smoke-free environment afforded by the regulation.

After the regulation was approved by each of the four counties, plaintiffs, each of whom resides or operates a business within defendant Charlevoix County, brought this action to invalidate the regulation by judicial declaration that the NMCHA was without authority to promulgate such a regulation and that the regulation itself was preempted by Part 126 of the PHC, MCL 333.12601 *et seq*., which prohibits smoking in buildings used by the public except in designated areas. In seeking summary disposition on these grounds, plaintiffs argued that nothing in Part 126 of the PHC, which is also known as the Michigan Clean Indoor Air Act (MCIAA),[2] authorizes a local health department to enforce or augment the smoking restrictions set by the MCIAA. Plaintiffs further argued that § 12605 of the MCIAA, MCL 333.12605, grants owners and operators of public places the discretion to choose whether to maintain a smoking section or remain smoke-free, and that this discretion to permit smoking in public places constitutes a statutorily conferred right that a local health department cannot annul by regulation. Moreover, plaintiffs argued, where the owner or operator of a public place chooses to have a designated smoking area, § 12605 requires only that existing physical barriers and ventilation be used to minimize the toxic effects of smoking. Thus, insofar as the NMCHA regulation requires that smoking be restricted to a separate, enclosed area with independent ventilation, it conflicts with the MCIAA and must be found to be invalid.

Citing this Court's decision in *Michigan Restaurant Ass'n v City of Marquette*, 245 Mich App 63; 626 NW2d 418 (2001), plaintiffs further asserted that smoking is an issue better suited to regulation on a statewide basis, and that local regulation must therefore yield to the preemptive provisions of the MCIAA. Plaintiffs additionally argued that, to the extent the regulation impinges on the common-law right of an employer to discharge an employee at will, the regulation violates public policy and is void. The trial court, however, disagreed and denied plaintiffs' motion. This appeal followed.

3

## II.  Analysis

Plaintiffs assert that the trial court erred in denying their motion for summary disposition.  In doing so, plaintiffs again argue that the NMCHA lacked the authority to promulgate regulations restricting smoking and that local regulation was, in any event, preempted by the MCIAA.  We disagree.

### A.  Standard of Review

Resolution of the questions presented on appeal requires the interpretation of statutes, which is a question of law that this Court reviews de novo.  See *Michigan Coalition for Responsible Gun Owners v Ferndale*, 256 Mich App 401, 405; 662 NW2d 864 (2003).  When interpreting a statute, this Court's goal is to ascertain and give effect to the intent of the Legislature by applying the plain language of the statute.  *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003).

### B.  Overview of the Michigan Clean Indoor Air Act

The MCIAA, enacted in 1986 as Part 126 of the PHC,[3] prohibits smoking "in a public place or at a meeting of a public body, except in a designated smoking area."  MCL 333.12603.  Although seemingly broad in scope, "public place," as defined by the MCIAA, renders the act inapplicable to most private-sector workplaces and public areas that are not themselves enclosed.  See MCL 333.12601(m).[4]  Also exempt from the requirements of the act are food service establishments,[5] MCL 333.12603(3), private educational facilities "after regularly scheduled school hours," MCL 333.12603(4), and enclosed private rooms or offices occupied exclusively by a smoker, "even if the room or enclosed office may be visited by a nonsmoker,"  MCL 333.12601(2).  Further, the MCIAA expressly does not apply to "a room, hall, or building used for a private function if the seating arrangements are under the control of the sponsor of the function and not under the control of the state or local government agency or the person who owns or operates the room, hall, or building."  MCL 333.12603(2).

In all other public places in which smoking is not "prohibited by law," the MCIAA permits a "person who owns or operates a public place" to designate a smoking area.  MCL 333.12605(1).[6]  In those public places in which an owner or operator elects to designate

a smoking area, the act requires that "existing physical barriers and ventilation systems shall be used to minimize the toxic effect of smoke in both smoking and adjacent nonsmoking areas." MCL 333.12605(1).[7] The act further requires that seating within the public place be arranged "to provide, as nearly as practicable, a smoke-free area," MCL 333.12607(b), and that the owner or operator develop, implement, and enforce "a written policy for the separation of smokers and nonsmokers which provides, at a minimum," for a procedure to receive, investigate, and take action on complaints, and that ensures that nonsmokers will be located closest to the source of fresh air and that special consideration will be given to individuals with a hypersensitivity to tobacco smoke, MCL 333.12605(3); see also MCL 333.12607(c).

C. Authority of the NMCHA to Promulgate Smoking Regulations

In challenging the validity of the regulation promulgated by the NMCHA, plaintiffs assert that nothing in Part 126 of the PHC authorizes a local health department to enforce or augment the smoking restrictions set by the MCIAA.[8] Plaintiffs argue that, pursuant to MCL 333.12613, implementation and enforcement of the act and rules promulgated thereunder is a power within the exclusive province of the Michigan Department of Community Health. Plaintiffs' argument in this regard, however, is not sustained by the plain language of § 12613(2) of Part 126, which expressly provides that "the department may authorize a local health department to enforce this part and the rules promulgated under this part." MCL 333.12613(2).

Moreover, even if the responsibility for the implementation and enforcement of the restrictions established by Part 126 had been exclusively granted to the Department of Community Health, that would not, by itself, deny a local health department the authority to promulgate, implement, and enforce similar regulations of its own making. As previously noted, Part 24 of the PHC authorizes the creation of local health departments such as the NMCHA. See MCL 333.2415 and 333.2421. Pursuant to § 2433 of Part 24, such departments are charged with the duty to

"continually and diligently endeavor to prevent disease, prolong life, and promote the public health through organized programs, including prevention and control of environmental health hazards; prevention and control of diseases; prevention and control of health

5

problems of particularly vulnerable population groups; development of health care facilities and health services delivery systems; and regulation of health care facilities and health services delivery systems to the extent provided by law.  [MCL 333.2433(1).]"

The regulation at issue is consistent with these duties and is authorized to be promulgated by the NMCHA under §§ 2435 and 2441 of Part 24, which provide that a local health department may "[a]dopt regulations to properly safeguard the public health," MCL 333.2435(d), or regulations that "are necessary or appropriate to implement or carry out the duties or functions vested by law in the local health department," MCL 333.2441(1).  See also MCL 333.2433(2)(a) (which provides that a local health department "shall . . . [i]mplement and enforce laws for which responsibility is vested in the local health department").  As argued by defendants, the only limitation placed by the Legislature on the promulgation and adoption of such regulations is that they "be at least as stringent as the standard established by state law applicable to the same or similar subject matter." MCL 333.2441(1).[9]  The regulation at issue here, being more restrictive than the standards set by the MCIAA, meets this requirement.

We recognize plaintiffs' argument that, under a plain reading of § 2433(1), the fulfillment of the duties imposed by that section on local health departments is arguably limited to the institution of programs.  The section must, however, be read in context and in light of the purpose of both Part 24 and the PHC in general.  See *Macomb Co Prosecuting Attorney v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001).  As noted earlier, MCL 333.2435(d) expressly grants a local health department authority to "[a]dopt regulations to properly safeguard the public health."  Plaintiffs assert that the Legislature has also granted local health departments more specific powers.[10]  However, that does not lessen the general duty and authority of those agencies to protect the public health, MCL 333.2433(1), and to adopt and implement regulations for that purpose, MCL 333.2435(d) and 333.2441(1).  In fact, the preliminary provisions of the PHC require that the code and each of its various parts "be liberally construed for the protection of the health, safety, and welfare of the people of this state."  MCL 333.1111(2); see also MCL 333.2401(2) (stating that the "general definitions and principles of construction" contained in article 1 of the PHC, MCL 333.1101 *et seq*., are "applicable to all articles in this code"), and *Frens Orchards, Inc v Dayton Twp Bd*, 253 Mich App

6

129, 134-135; 654 NW2d 346 (2002) (applying the preliminary provisions of the PHC to Part 124 of the code, regulating agricultural labor camps). Because, when so construed, the provisions of Part 24 evince a legislative intent to permit regulation of the kind at issue here, we reject plaintiffs' assertion that the NMCHA was without authority to promulgate the regulation.

* * *

## E. Employment at Will

Finally, plaintiffs argue that because the regulation's provision that an employer cannot discharge, refuse to hire, or otherwise retaliate against a person for exercising his or her right to a smoke-free environment adversely affects the common-law right of an employer to discharge an employee at will, the NMCHA regulation violates public policy and is therefore void. Again, we disagree.

Plaintiffs correctly argue that, in the absence of a contract providing to the contrary, employment is usually terminable by the employer or the employee at any time, for any or no reason whatsoever. *Suchodolski v Michigan Consolidated Gas Co*, 412 Mich 692, 694-695; 316 NW2d 710 (1982). It is well settled, however, that an employer is not free to discharge an employee at will when the reason for the discharge contravenes public policy. See *id*. at 695.

In *Suchodolski*, *supra* at 695-696, our Supreme Court provided three examples of public-policy exceptions to an employer's right to discharge an at-will employee under the employment at will doctrine. An at-will employee's discharge violates public policy if any one of the following occurs: (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment. *Id*.

Although not itself a legislative enactment or statement, the regulation at issue here provides employees with certain specified rights and was, as required by MCL 333.2441(1), approved for

7

application by the governing bodies of each of the various counties served by the NMCHA.[17]  Given these facts, and considering the public policy of minimizing the effects of smoking evinced by the Legislature through its enactment of Part 126 and § 12905 of Part 129 of the PHC, the regulation's restriction of the general right to discharge an employee at will is consistent with the exceptions to that doctrine set forth in *Suchodolski*.  Accordingly, we reject plaintiffs' claim that the regulation's prohibition in this regard itself violates public policy and is therefore void.

    Affirmed.

_____

[1] Pursuant to § 2415 of Part 24, "[t]wo or more counties . . . , by a majority vote of each local governing entity and with approval of the [state] department [of community health], may unite to create a district health department."  MCL 333.2415.

[2] See MCL 333.12616.

[3] See 1986 PA 198, effective January 1, 1987.

[4] MCL 333.12601(m)(*i*) defines "public place" as

"[a]n enclosed, indoor area owned or operated by a state or local governmental agency and used by the general public or serving as a place of work for public employees or a meeting place for a public body, including an office, educational facility, home for the aged, nursing home, county medical care facility, hospice, hospital long-term care unit, auditorium, arena, meeting room, or public conveyance."

Enclosed indoor areas that are not owned or operated by a state or local governmental unit, but are included in the definition of "public place" if used by the general public, include educational facilities, homes for the aged, nursing homes, county medical care facilities, hospices, hospital long-term care units, auditoriums, arenas, theaters, museums, concert halls, and "[a]ny other facility during the period of its use for a performance or exhibit of the arts."  MCL 333.12601(m)(*ii*)(A)-(H).

[5] As discussed *infra*, smoking in food service establishments is nonetheless regulated under Part 129 of the PHC, MCL 333.12905 *et seq*.

[6] Note, however, that the MCIAA places slightly more stringent requirements on two types of facilities: child care and health facilities. In child care facilities or on property under the control of a child care facility, smoking is completely prohibited. MCL 333.12604. In health facilities, smoking is allowed only in a designated area that is "enclosed and ventilated or otherwise constructed to ensure a smoke free environment in patient care and common areas." MCL 333.12604a(2)(b). Further, in a health facility, patients may smoke only if a "prohibition on smoking would be detrimental to the patient's treatment as defined by medical conditions identified by the collective health facility medical staff." MCL 333.12604a(2)(a). Patients who are permitted to smoke must, however, be in a separate room from nonsmoking patients. *Id.*

[7] However, "[i]n the case of a public place consisting of a single room, the state or governmental agency or person who owns or operates the single room" is considered to be in compliance with the act "if ½ of the room is reserved and posted as a no smoking area." MCL 333.12605(2).

[8] Although the trial court's failure to address the authority of the NMCHA to promulgate the regulation at issue renders the issue unpreserved for review on appeal, *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999), this Court may review an unpreserved issue if it is one of law and the facts necessary for resolution of the issue have been presented, *Adam v Sylvan Glynn Golf Course*, 197 Mich App 95, 98-99; 494 NW2d 791 (1992). As presented both below and on appeal, the question whether the NMCHA is authorized to develop regulations restricting smoking presents an issue of statutory interpretation, which is a question of law for which the facts necessary for its resolution are sufficiently present to permit this Court's review. See *Michigan Coalition*, *supra* at 405.

[9] Unlike Part 24 of the PHC, the regulatory enabling statute at issue in *DABE, Inc v Toledo-Lucas Co Bd of Health*, 96 Ohio St 3d 250; 773 NE2d 536 (2002), does not contain a similar statement evincing a legislative intent to permit coequal regulation of the public health by a local health department. Thus, we reject plaintiffs' reliance on that case as support for their assertion that the NMCHA was without authority to promulgate the regulation at issue in this case.

9

[10] See, e.g., MCL 333.2455, which permits a local health department to "issue an order to avoid, correct, or remove . . . a building or condition which violates health laws or which the local health officer . . . reasonably believes to be a nuisance, unsanitary condition, or cause of illness."

* * *

[17] MCL 333.2441(1) provides, in relevant part, that regulations adopted by a local health agency "shall be approved or disapproved by the local governing entity."

_____

II. Response to Justice Markman's Partial Concurrence and Partial Dissent

Justice Markman agrees that the workplace smoking regulation at issue is "consistent with MCL 333.2433(1), at least to the extent it is designed to 'prevent disease, [and] prolong life.'" *Post* at 8. Therefore, Justice Markman concludes that the county boards of commissioners acted within their statutory authority when regulating smoking in this particular case. Nevertheless, Justice Markman contends that the anti-retaliation section of this regulation is invalid because it exceeds the legislative authority granted to the county boards of commissioners and, alternatively, because it contravenes the law of at-will employment in this state.

The anti-retaliation section of this regulation essentially ensures that an employee will not be terminated for asserting rights that were granted by the regulation. The Michigan Constitution provides that "[b]oards of supervisors shall have legislative, administrative and such other powers and duties as provided by law." Const 1963, art 7, § 8. The plain language of the PHC itself places a broad

10

duty on local health departments to take necessary actions for preventing and controlling hazards to human health. Contrary to the partial dissent, we believe that the county boards of commissioners possessed the authority to adopt the anti-retaliation section of this regulation.

The Legislature grants county boards of commissioners the authority to "pass ordinances that relate to county affairs and do not contravene the general laws of this state . . . and pursuant to section 10b provide suitable sanctions for the violation of those ordinances." MCL 46.11(j). Section 10b provides that county boards of commissioners may impose a sanction of imprisonment for not more than 90 days or a fine of not more than $500 for the violation of an ordinance. MCL 46.10b(1). Additionally, through the PHC, the Legislature provides county boards of commissioners with the authority to approve local health department regulations that are "at least as stringent as the standard established by state law . . . ." MCL 333.2441(1).

It is important to note that the Legislature explicitly instructs that the PHC is to be "liberally construed for the protection of the health, safety, and welfare of the people of this state." MCL 333.1111(2). The PHC expressly authorizes local health departments to "adopt regulations to properly safeguard the public health and to prevent the spread of diseases and sources of contamination." MCL 333.2435(d). In addition, the PHC *mandates* that local health departments "continually and diligently endeavor to prevent disease, prolong life, and promote the public health through organized programs, *including prevention and control* of

11

environmental health hazards; *prevention and control* of diseases; [and] *prevention and control* of health problems of particularly vulnerable population groups . . . ." MCL 333.2433(1) (emphasis added). Furthermore, the PHC expressly directs local health departments to "[i]mplement and enforce laws for which responsibility is vested in the local health department." MCL 333.2433(2)(a).

As Justice Cavanagh correctly points out, county boards of commissioners adopting regulations by majority vote are essentially functioning as local legislative bodies. In this case, the local health department, the NMCHA, created the regulation and submitted it to the boards for approval, just as MCL 333.2441(1) requires. The submitted regulation provides for a private cause of action against an employer who discharges an employee for asserting rights created by the regulation.

We have already concluded that the Legislature has not expressly limited the exact manner in which a local health department prevents and controls health hazards within its communities. In fact, local health departments are explicitly directed to take action to safeguard the public health. See MCL 333.2435(d); MCL 333.2433(1); MCL 333.2433(2)(a). We conclude that the anti-retaliation provision of this workplace smoking regulation is another method used by the local health department to prevent and control the health hazards caused by secondhand smoke inhalation.

12

In *Mack v Detroit*, 467 Mich 186, 189; 649 NW2d 47 (2002), this Court held that a city charter providing a private cause of action against the city itself for discrimination based on sexual orientation contravenes the government tort liability act and, therefore, such a cause of action will not be recognized. This Court reasoned that "a governmental agency is immune unless the Legislature has pulled back the veil of immunity and allowed suit by citizens against the government." *Id*. at 195. Additionally, this Court noted that exceptions to governmental immunity are narrowly construed. *Id*. at 196 n 10. However, the majority in *Mack* expressly limited its analysis to the city's lack of authority in light of governmental immunity law and declined to address the question whether a city can create a private cause of action against *nongovernmental* entities. *Id*. at 197 n 12, 194 n 6.

Justice Markman correctly observes that *Mack* involved a *city's* authority to create a private cause of action, while this particular case involves a *county's* authority to do so. *Post* at 11 n 4. However, we note that in *Mack*, the majority placed weight on the lack of legislative authorization for the city to create a cause of action and the limitations placed on municipalities by the Legislature. *Mack*, *supra* at 195-197. Here, the Legislature *has* expressly placed the affirmative duty on local health departments to take measures to safeguard human health, MCL 333.2433(1), and authorizes those departments to do so through regulations. MCL 333.2435(d). Again, the Legislature has explicitly instructed that the PHC be liberally construed. MCL 333.1111(2). The regulation imposes smoking

13

restrictions under the stated purpose of protecting "the public health and welfare by regulating smoking in public places and places of employment and recreation in the counties which comprise this multi-county health department." Section 1011 of the regulation states that an employer may not retaliate against any employee, potential employee, or customer for exercising the right to a healthy work environment provided pursuant to the regulation. Furthermore, § 1012(F) provides that an employee or other private citizen may bring legal action to enforce this right.

While Justice Markman acknowledges the constitutional and statutory authority granted to county boards of commissioners, he alternatively concludes that the private cause of action provision of the regulation at issue is invalid on the basis that it "contravenes the law of at-will employment in this state." *Post* at 10. We, instead, agree with the Court of Appeals that the private cause of action in this particular regulation falls within *Suchodolski's* three examples of public policy exceptions to the common law at-will employment doctrine.

In *Sucholdolski v Michigan Consolidated Gas Co*, 412 Mich 692, 694-695; 316 NW2d 710 (1982), this Court held that while either party to an employment contract for an indefinite term may generally terminate the employment at any time for any, or no, reason, "some grounds for discharging an employee are so contrary to public policy as to be actionable." Examples of exceptions to Michigan's at-will employment doctrine, as explained in *Suchodolski*, include "adverse treatment of employees who act in accordance with a statutory right or

14

duty," an employee's "failure or refusal to violate a law in the course of employment," and an employee's "exercise of a right conferred by a well-established legislative enactment." *Id*. at 695-696.

Because the regulation grants employees the right to a smoke-free work environment, the retaliatory discharge of an employee exercising this right would constitute "adverse treatment of employees who act in accordance with a statutory right or duty." *Suchodolski*, *supra* at 695. Citing *Dudewicz v Norris-Schmid*, 443 Mich 68, 80; 503 NW2d 645 (1993), Justice Markman argues that if the regulation is enforceable under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., then a public policy claim for its violation is not viable. *Post* at 15 n 8. We first note that *Dudewicz* involved an employee who filed a criminal complaint against a fellow employee and was then discharged. In this case, we are simply concerned with the county's *authority* to adopt the anti-retaliation provision and provide for a private cause of action in order to enforce its regulations, and the WPA does not effectively negate the authority granted by the Legislature in the PHC. Furthermore, in *Dudewicz* this Court only reviewed the Court of Appeals' application of *Suchodolski* in light of the first example of exceptions to the at-will employment doctrine. *Id*. at 72.

Because the private cause of action in the regulation also constitutes the "exercise of a right conferred by a well-established legislative enactment," we disagree with Justice Markman that it is necessary to remand this case in order to consider whether the regulation at issue may be enforced under the WPA. Part

15

126 of the PHC was clearly enacted by the Legislature in an effort to minimize the toxic effect of smoking. See MCL 333.12605. Pursuant to the authority granted by the Legislature, the county boards of commissioners adopted the regulation in an effort to further that same goal. Again, the regulation was adopted by the county boards of commissioners while they were functioning as local legislative bodies and exercising the authority granted to them by the Legislature in the PHC. In addition, the Legislature expressly authorizes a local health department to enforce Part 126, and rules promulgated under it, by any "appropriate action authorized by law." MCL 333.12613(2). Therefore, we agree with the Court of Appeals' conclusion that the regulation was enacted pursuant to the authority granted by the Legislature in MCL 333.2433(1), and the plain language of MCL 333.12613(2) does not limit the enforcement of such regulations to state departments of community health.

## II. Conclusion

Given the Legislature's statutory mandates to minimize the toxic effects of smoking on human health, the authority granted in the PHC to local health departments to prevent and control human health hazards and the facts of this particular case, we disagree with the partial concurrence and partial dissent's view that the *Suchodolski* exceptions to the at-will employment doctrine cannot possibly apply here. We, therefore, adopt the Court of Appeals opinion, which correctly

16

concluded that the NMCHA and the local boards of commissioners were authorized to enact the regulation.

Affirmed.

Elizabeth A. Weaver
Marilyn Kelly
Michael F. Cavanagh
Diane M. Hathaway

STATE OF MICHIGAN

SUPREME COURT

KENT A. MCNEIL, FRANKLIN E.
FISHER, and ROGER GRIFFIN,

      Plaintiffs,

and

SCOTT WAY and JEFF LEGATO,

      Plaintiffs-Appellants,

v                           No. 134437

CHARLEVOIX COUNTY and
NORTHWEST MICHIGAN COMMUNITY
HEALTH AGENCY,

      Defendants-Appellees.

CAVANAGH, J. (*concurring*).

I concur in full with the majority opinion, including its conclusion that the Clean Indoor Air Regulation (CIAR) should be upheld. I would hold that the CIAR, including §§ 1010(F), 1011, and 1012(F), is within the scope of the authority delegated by the state constitution and the applicable statutes to the Northwest Michigan Community Health Agency (NMCHA) and the county boards of commissioners. I further agree that the non-retaliation provision of the CIAR, § 1011, falls within the public-policy exception to the common-law at-will employment doctrine. I write separately in order to clarify my views on the proper

application of *Suchodolski v Michigan Consolidated Gas Co*, 412 Mich 692; 316
NW2d 710 (1982), to this case and to further respond to Justice Markman's
opinion.

## I. NON-RETALIATION PROVISION

### A. *SUCHODOLSKI* ANALYSIS

This Court asked the parties to address whether the non-retaliation
provision in the CIAR, § 1011, is consistent with *Suchodolski*. *McNeil v
Charlevoix Co*, 482 Mich 1014, 1014-1015 (2008). [1] I think that § 1011 of the
CIAR falls squarely within *Suchodolski*'s first example of a public policy creating
an exception to the general rule of at-will employment.

Under the common law, there is a general rule of at-will employment,
meaning that "[i]n general, in the absence of a contractual basis for holding
otherwise, either party to an employment contract for an indefinite term may
terminate it at any time for any, or no, reason." *Suchodolski*, 412 Mich at 694-
695. As discussed in the majority opinion, *Suchodolski* recognized that, under the
common law, there is an exception to the general at-will rule when the basis for
termination is contrary to public policy. *Id.* at 695. *Suchodolski* stated that "an
exception has been recognized to [the common-law at-will employment] rule,

---

[1] Section 1011 of the CIAR reads: "No person or employer shall discharge,
refuse to hire or in any manner retaliate against any employee, applicant for
employment or customer because such employee, applicant or customer exercises
any right to a smoke-free environment afforded by this regulation."

based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id.* In addition to explaining the general public-policy exception, *Suchodolski* provided three examples of public policies that fall within the exception. *Id.* at 695-696.[2]

I would hold that § 1011 of the CIAR falls within the first example provided in *Suchodolski* of a public policy that creates an exception to the general rule of at-will employment. The first *Suchodolski* example is an explicit legislative statement that prohibits the discharge of an employee in retaliation for that employee's acting in accordance with a legally recognized right or duty. *Suchodolski*, 412 Mich at 695. This is precisely what § 1011 is. Section § 1011 provides that "[n]o person or employer shall discharge, refuse to hire or in any manner retaliate against any employee, applicant for employment or customer because such employee, applicant or customer exercises any right to a smoke-free environment afforded by this regulation." The county boards of commissioners that organized the NMCHA adopted the CIAR by a majority vote. They are local legislative bodies and were exercising the legislative power granted to them by the constitution and statutes of our state.[3] Thus, the CIAR qualifies as a legislative statement. Further, an employee's right to a smoke-free environment is a legally

---

[2] As discussed here, I think that § 1011 of the CIAR falls within at least the first *Suchodolski* example. But even if it did not, I would hold that it is within the general public-policy exception.

[3] See Const 1963, art 7, § 8; MCL 46.11; MCL 333.2441(1).

recognized right under the CIAR.[4]    Finally, the CIAR explicitly prohibits

discharging an employee in retaliation for that employee's exercise of a legally

recognized right.   Therefore, I would hold that § 1011 of the CIAR falls within

*Suchodolski*'s first example of a public policy that constitutes an exception to the

common-law at-will employment doctrine.[5]

---

[4] *Suchodolski* referred to protection for employees acting in accordance with a "statutory" right or duty, but, in the context of the purpose of the exception, there is no reason to differentiate a legally recognized right or duty created by a state statute and a legally recognized right or duty created by local law.  See also *Gale v Oakland Co Bd of Supervisors*, 260 Mich 399, 404; 245 NW 363 (1932), stating that  "[a]n act passed by [the county board of commissioners] pursuant to authority delegated or conferred by the legislature has the same force as a statute passed by the legislature itself."  (Quotation marks and citation omitted.)

[5] This analysis is not inconsistent with *Dudewicz v Norris-Schmid*, 443 Mich 68, 78-80; 503 NW2d 645 (1993).  *Dudewicz* held that the Whistleblowers' Protection Act (WPA) preempted a claim under the public-policy exception to the at-will employment rule because the WPA provides an exclusive remedy for a violation of its non-retaliation provision.  *Dudewicz*, 443 Mich at 78-80.  Therefore, *Dudewicz* limits the first *Suchodolski* example of a public-policy exception to the at-will employment rule only where a legislative enactment has not only explicitly prohibited the discharge of an employee acting in accordance with a statutory right or duty, but also provided an exclusive remedy for violation of that explicit prohibition.  Accord *Humenny v Genex Corp*, 390 F3d 901, 907-908 (CA 6, 2004) (stating that because *Dudewicz* limited *Suchodolski*'s public-policy exception "by holding that 'as a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive, not cumulative,'" when applying the public-policy exception, the Court should first determine whether there is "a well-established legislative enactment that addresses the particular conduct at issue," and then, if there is, address whether the statute "provides a remedy to plaintiffs who allege violations of the statute").  To the extent that *Vagts v Perry Drug Stores*, 204 Mich App 481, 485; 516 NW2d 102 (1994), held otherwise, I would overrule it.

Justice Markman asserts that I have misread *Dudewicz*, but I respectfully submit that my reading of *Dudewicz* is the understanding advanced by the

*Dudewicz* Court, as evidenced by the opinion as a whole, and the Court of Appeals cases relied on in *Dudewicz*. Justice Markman argues that *Dudewicz* excludes application of the public-policy exception in all instances where a statute or regulation "prohibits discharge in retaliation for the conduct at issue." *Post* at 15 n 8. To support this proposition, he relies on the statement in *Dudewicz* that "'[a] public policy claim is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue.'" *Post* at 15 n 8, quoting *Dudewicz*, 443 Mich at 80. That statement supports Justice Markman's argument if read standing alone, but in my judgment the context of the opinion shows that the Court intended to limit the public-policy exception only in instances in which a legislative enactment both provides an anti-retaliation provision and also creates an exclusive remedy. *Dudewicz* holds that the Court of Appeals "should have found that any public policy claim was preempted by the application of the WPA," reasoning that "as a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive, not cumulative," and because there was no common-law counterpart to the WPA, "[t]he remedies provided by the WPA . . . are exclusive . . . ." *Id*. at 78-79. The Court thus concluded that "because the WPA provides relief to [the plaintiff] for reporting his fellow employee's illegal activity, his public policy claim is not sustainable." *Id*. at 80. In other words, *Dudewicz* held that where the WPA applies, the public-policy exception to the common-law at-will employment doctrine is preempted because the party was afforded relief by the WPA's exclusive statutory remedy. This reasoning does not suggest that a non-retaliation provision in a legislative enactment would, standing alone, preempt a public-policy claim if the legislative enactment either did not provide a remedy or if the remedy provided was not exclusive.

Further, this understanding of the public-policy exception is the same understanding presented in the Court of Appeals cases cited for support in *Dudewicz*, including the cases to which the Court of Appeals limited the public-policy exception. See *Dudewicz*, 443 Mich at 79-80. For example, in one of those cases, *Ohlsen v DST Industries, Inc*, 111 Mich App 580, 586; 314 NW2d 699 (1981), the Court stated that the public-policy exception "carve[s] out an exception to the general rule that either party may terminate an employment at will for any reason or no reason by providing the discharged employee a remedy *where none is provided under the statute*." (Quotation marks omitted; emphasis added.) The Court held that the plaintiff in that case could not state a claim under the public-policy exception, reasoning that

> retaliatory discharges are expressly prohibited under the [applicable] statute, and, in addition, a remedy is provided to an employee who

5

## B. RESPONSE TO JUSTICE MARKMAN'S PARTIAL CONCURRENCE AND PARTIAL DISSENT

Justice Markman would hold that § 1011 of the CIAR does not fall within the public-policy exception recognized in *Suchodolski* because he "would not extend the *Suchodolski* exceptions beyond the limits of *statewide* public policy," particularly where the local regulation is "more restrictive or burdensome than our default statewide public policy." *Post* at 18. I disagree because I think that, like

claims a violation of the statute. Therefore, unlike the plaintiff in [an earlier case applying the public-policy exception], *the plaintiff in the present case has a remedy provided by the statute under which he is suing*.

The [earlier] decision does not extend to this case where the statute involved prohibits retaliatory discharge *and provides an exclusive remedy*. [*Ohlsen*, 111 Mich App at 585-586 (emphasis added; quotation marks omitted).]

Under the proper reading of *Dudewicz*, it is clear that it is generally inapplicable here because the CIAR does not necessarily create an exclusive remedial scheme that preempts applicable common-law claims, if such claims exist. As a comparison, the WPA includes a non-retaliation provision and also a remedial scheme that creates a cause of action for damages or injunctive relief, grants jurisdiction to the appropriate court, enumerates the burden of proof, and expressly provides remedies. MCL 15.363 and 15.364. As discussed in Part II of this opinion, I do not think that it is appropriate for this Court to decide now to what extent §§ 1010(F) and 1012(F) of the CIAR affect the availability of any private remedies, so it is unclear at this point whether the CIAR creates a private remedy or whether that remedy could be deemed exclusive. If those questions were properly before a court, and that court determined that the CIAR *does* create a cause of action with private remedies, and further determined that the boards of commissioners intended such remedies to be exclusive, then, under *Dudewicz*, the public-policy exception would not apply. I would further note that there are circumstances under which § 1011 of the CIAR would be preempted by the WPA and in those cases, under *Dudewicz*, the public-policy exception to the general rule of at-will employment would not apply.

6

other validly enacted laws in Michigan, an otherwise valid local law can be part of *Suchodolski*'s public-policy exception.

To begin with, local laws are *part* of the state's law and policies, so it is difficult to evaluate them distinctly from statewide policy. Justice Markman states that "while the regulation does reflect the public policy of the four counties that enacted it, it cannot, in my judgment, be fairly said to reflect the public policy of the state of Michigan." *Post* at 18. But, as a state, Michigan has a policy of delegating authority to county boards of commissioners to act in matters "that relate to county affairs," as long as the local regulations do not contravene statewide law. MCL 46.11(j); see also Const 1963, art 7, § 34.[6] This, in effect, creates a default scheme of interwoven local and state regulation in areas where local legislative bodies are authorized to act. So long as local laws are within the scope of authority delegated to local legislative bodies by the Legislature and otherwise valid, then local laws are part of the state's legal and public-policy framework and reflect the Legislature's choice to enable overlapping state and local regulation of that subject area.[7]

---

[6] See Part II(A) of this opinion.

[7] Justice Markman argues that it would be bad policy to allow local governments to create non-retaliation provisions because "it is considerably more burdensome" to employers, "given that all 83 counties could theoretically adopt varying local public policies." *Post* at 18. This outcome is the result of the Legislature's decision to permit state and local regulation in this area, however, and it is up to the Legislature to determine whether the benefits of local regulation outweigh the costs of a lack of statewide uniformity. Justice Markman states that

The Legislature has even more specifically identified public health as an area in which state and local regulation is needed. The Legislature expressly authorized boards of commissioners, in conjunction with local health departments, to adopt standards "at least as stringent as the standard established by state law" in order to regulate as "necessary and appropriate" to carry out the statutory *duties* of the local health departments to "continually and diligently endeavor to prevent disease [and] prolong life." MCL 333.2441(1) and 333.2433(1). As the majority opinion concludes, the CIAR falls within this authority. Therefore, the Legislature has specifically contemplated that there may be a patchwork of regulation across the state in this area.[8]

In light of the interwoven nature of state and local policies in Michigan, in my judgment, validly enacted local laws are part of *Suchodolski*'s public-policy

---

this position "fails to consider that the Legislature has already done just that by having indicated that a county is only allowed to enact ordinances that '*do not contravene the general laws of this state*.'" *Post* at 18 n 11, quoting MCL 46.10b. I think that Justice Markman is missing my point. Obviously, he and I have differing views about whether the CIAR contravenes the general laws of the state, but I cannot see how his concern that varying local regulations could be "burdensome" to employers is relevant to that discussion. Regardless of whether the CIAR contravenes the law of the state for a different reason, it does not do so merely by virtue of the fact that it is a local regulation, given that the state has an explicit policy of permitting a patchwork of local regulation in many areas of law.

[8] For this reason, I also disagree with Justice Markman's statement that because the CIAR is more restrictive than the Michigan Clean Indoor Air Act (MCIAA), the CIAR does not "reflect the public policy of the state of Michigan." *Post* at 18. To the extent that CIAR is more restrictive than the MCIAA, but not preempted by the MCIAA, it reflects the state policy to allow interwoven state and local laws in the area of public health.

exception. The purpose of the public-policy exception is to prevent an employer from discharging an employee on a basis that is contrary to public policy. *Suchodolski*, 412 Mich at 695. *Suchodolski* provides that a public policy can be established, at a minimum, by an explicit or implicit legislative policy. See *id*. at 695-696. The CIAR is an explicit legislative policy. *Suchodolski* did not distinguish between statewide and local laws or statewide and local legislative bodies. Instead, *Suchodolski* repeatedly referred to public policies that are "legislative statements," a "legislative expression of policy," and a "legislative enactment," without qualification.[9] *Id*. at 695-696. *Suchodolski* did recognize some limits to the public-policy exception, but none applies where, as here, the policy was enacted by a legislative body and was intended to directly confer rights on employees.[10] I do not think it serves the purposes of the public-policy exception to create another limitation excluding laws enacted by local legislative bodies because, in the counties where the CIAR has been enacted, it is part of the

---

[9] Justice Markman agrees that a county board of commissioners "is a legislative body" and that the CIAR "constitutes the 'law' in the four counties," but nonetheless concludes that the *Suchodolski* public policy exception was not intended to include laws enacted by county boards because a county board is not "the Legislature" and county laws are not statewide law. *Post* at 17-18. But *Suchodolski* does not provide a basis for this distinction. The few cases and statutes to which *Suchodolski* refers do involve laws adopted by the statewide Legislature, but nothing in the opinion indicates that it finds that to be significant.

[10] The limits provided in *Suchodolski* were that a public policy cannot be established by the code of ethics of a private association and that a right cannot be inferred from extensive regulation if the regulation is not "directed at conferring rights on the employees." *Suchodolski*, 412 Mich at 696-697.

governing law of the region and an employer is bound to follow it. It would be contrary to law for an employer to fire an employee on grounds contrary to the CIAR, and it is therefore consistent with the purposes of the public-policy exception to include local laws in the public-policy exception. Therefore, I would not exclude laws enacted by local legislative bodies from the public-policy exception to the general rule of at-will employment.

## II. PRIVATE CAUSE OF ACTION

This Court also asked the parties to address whether the boards of commissioners had the authority to adopt §§ 1010(F) and 1012(F) of the CIAR, which create private causes of action.[11] *McNeil*, 482 Mich at 1014-1015. I agree with the majority opinion's conclusion that §§ 1010(F) and 1012(F) are valid because they are within the authority of the boards of commissioners and do not contravene the general laws of the state.

As Justice Markman stated, the Michigan Constitution provides that county boards of commissioners have only those legislative, administrative, and other powers granted to them by law. Const 1963, art 7, § 8. The scope of authority delegated to boards of commissioners by law, however, is very broad. To begin with, the constitution provides that the powers granted to counties by the

---

[11] Section 1010(F) of the CIAR states that "[n]otwithstanding any other provisions of this regulation, a private citizen may bring legal action to enforce this regulation." Section 1012(F) states that "[n]otwithstanding any other provisions of this regulation, a private citizen may bring legal action to enforce this regulation."

10

constitution and by law "shall be liberally construed in their favor" and "shall include those fairly implied and not prohibited by this constitution." Const 1963, art 7, § 34. Further, the Legislature very broadly granted boards of commissioners the power to "pass ordinances that relate to county affairs and do not contravene the general laws of this state . . . ." MCL 46.11(j).

In light of article 7, §§ 8 and 34, of the Michigan Constitution, and MCL 46.11(j), this Court must address two questions in order to determine whether §§ 1010(F) and 1012(F) of the CIAR are within the powers delegated to boards of commissioners: (1) whether the laws enabling boards of commissioners to enact regulations adopted by local health departments fairly imply the power to create a private right of enforcement and, if so, (2) whether doing so otherwise contravenes the general laws of the state or is prohibited by law.

First, in my judgment, §§ 1010(F) and 1012(F) are within the authority delegated to boards of commissioners because the power to create a private right of action is fairly implied by the relevant law delegating authority to boards of commissioners. The state constitution provides that laws concerning counties should be liberally construed in their favor and shall be construed to include "those [powers] fairly implied and not prohibited by this constitution." Const 1963, art 7, § 34. As noted, the constitution and state statutes give boards of commissioners broad authority to exercise their legislative power by adopting ordinances that relate to county affairs. The power to create a private cause of action is within the legislative power. See *Mintz v Jacob*, 163 Mich 280, 283; 128

11

NW 211 (1910).[12] Therefore, in my judgment, the power to create a private cause of action is fairly implied from the broad grant of legislative power given to boards of commissioners in this area.

Justice Markman argues that we should infer that MCL 46.10b was intended to limit boards of commissioners' power in a manner that would prevent the creation of a private cause of action. As Justice Markman noted, MCL 46.11(j) provides that boards of commissioners may adopt sanctions pursuant to MCL 46.10b for violations of ordinances adopted under MCL 46.11(j).[13] Justice Markman would hold that this limits the ability of boards of commissioners to adopt sanctions not included in MCL 46.10b, at least when boards of commissioners are acting solely under powers authorized in MCL 46.11(j). To the extent that MCL 46.11(j) can be read to limit the authority of boards of commissioners, however, I do not think that §§ 1010(F) and 1012(F) of the CIAR necessarily conflict with this limit given that they do not expressly create any

---

[12] See also, generally, *Gardner v Wood*, 429 Mich 290, 301; 414 NW2d 706 (1987). I further note that, in Michigan, the ability to create a private cause of action is also within the authority of the courts. *Id.*

[13] The sanctions permitted by § 10b include imprisonment for a period of not more than 90 days or a fine of not more than $500. Notably, the Public Health Code authorizes additional penalties for violation of regulations that, like the CIAR, are also promulgated under the authority of the Public Health Code. See MCL 333.2441(2) and 333.2461.

12

additional penalties beyond those applicable for violation of the statute.[14] Sections 1010(F) and 1012(F) only state that "a private citizen may bring legal action to enforce this regulation"; they do not necessarily limit or enhance the extent to which remedies are available.[15] Therefore, as the only question currently before this Court is whether the boards of commissioners may create a private cause of action to enforce the CIAR, and not what remedies may be available through the private cause of action, I do not think that MCL 46.10b limits the power of the boards of commissioners to adopt §§ 1010(F) and 1012(F).

Second, I do not think that §§ 1010(F) and 1012(F) of the CIAR contravene the laws of the state. The authority of boards of commissioners to create private rights of action is limited to the extent that doing so would contravene statewide law since, under article 7, § 8, of the state constitution, boards of commissioners only have the powers granted to them by law and, under MCL 46.11(j), they

---

[14] The penalties that may be imposed for violations of the CIAR are provided in § 1012(B) and (C) of the CIAR.

[15] Notably, the question of whether boards of commissioners could create a private cause of action against a private entity for a private remedy, such as damages, is not before us. The question whether a court could or should imply a cause of action for a private remedy from the CIAR is also not before us. I do not think it is necessary or appropriate for this Court to address these issues today given that the Court concludes that the CIAR is at least facially valid and this is a declaratory action. Although Michigan's court rule permitting declaratory actions, MCR 2.605, should be broadly construed, there are still limitations to the scope of a declaratory action. See *Allstate Ins Co v Hayes*, 442 Mich 56, 65-66; 499 NW2d 743 (1993). I think it is beyond the scope of this declaratory action for the Court to pontificate regarding the remedies available to future private litigants who are not parties to this case.

cannot adopt ordinances that are contrary to Michigan's general laws. Justice Markman argues that the provisions of the CIAR creating private causes of action are contrary to the general laws of the state because they are inconsistent with MCL 46.10b and therefore do not fall within *Suchodolski*'s public-policy exception to the common-law at-will employment doctrine. As discussed, I think that §§ 1010(F) and 1012(F) are at least facially valid and thus, at least to the extent this Court is reviewing these sections today, may fall within *Suchodolski*'s public-policy exception and do not necessarily contravene the general laws of the state.

III. CONCLUSION

For the reasons discussed here, I concur with the majority opinion and conclude that the CIAR, including §§ 1010(F), 1011, and 1012(F), should be upheld.

Michael F. Cavanagh
Marilyn Kelly

14

KENT A. MCNEIL, FRANKLIN E.
FISHER, and
ROGER GRIFFIN,

       Plaintiffs,

and

SCOTT WAY and JEFF LEGATO,

       Plaintiffs-Appellants,

v

No. 134437

CHARLEVOIX COUNTY and
NORTHWEST MICHIGAN COMMUNITY
HEALTH AGENCY,

       Defendants-Appellees.

_____

MARKMAN, J. (*concurring in part and dissenting in part*).

This case involves an indoor-air regulation proposed by Northwest Michigan Community Health Agency (NMCHA) (a four-county district health department) that, pursuant to MCL 333.2441(1), became effective after it was approved by the corresponding four county boards of commissioners. The first part of the regulation imposes a broad ban on smoking in public and private workplaces, including business vehicles occupied by more than one person, and requires any business (excluding restaurants) that provides a designated smoking area to do so in a separate enclosed area that is independently ventilated. The

second part of the regulation prohibits an employer from taking an adverse employment action against a person who asserts the right to a smoke-free environment, and creates a private right of action by such person against his or her employer.

After this regulation was approved, plaintiff business owners in the affected counties filed an action for declaratory relief, arguing that the NMCHA lacked the authority to enact such a regulation and that the regulation was preempted by the less restrictive Michigan Clean Indoor Air Act, MCL 333.12601 *et seq.* Plaintiffs also argued that the regulation was invalid because it impinged on an employer's common-law right to discharge an at-will employee. Plaintiffs' motion for summary disposition was denied by the trial court, and they appealed.

The Court of Appeals upheld the regulation in a published opinion. *McNeil v Charlevoix Co*, 275 Mich App 686; 741 NW2d 27 (2007). The Court concluded that the NMCHA possessed the authority to adopt the regulation and that the regulation was not preempted by the Michigan Clean Indoor Air Act. The Court also held that the regulation's restriction on an employer's general right to discharge an at-will employee did not violate Michigan's "at-will" employment doctrine because it fell within exceptions to that doctrine set forth in *Suchodolski v Michigan Consolidated Gas Co*, 412 Mich 692, 694-695; 316 NW2d 710 (1982).

We granted leave to appeal and asked the parties to brief

> (1) whether the local health department or the county board of commissioners, the entity vested with final authorization of the regulation, MCL 333.2441(1), can create a right or private cause of

2

action against a private entity that alters Michigan's at-will employment doctrine; (2) whether the right or private cause of action created by Clean Indoor Air Regulation § 1001 [sic: 1011] falls within the exceptions set forth in *Suchodolski v Michigan Consolidated Gas Co*, 412 Mich 692 (1982), to Michigan's at-will employment doctrine; and (3) whether the exceptions to Michigan's employment at-will doctrine set forth in *Suchodolski* on the basis of "public policy" are consistent with this Court's decision in *Terrien v Zwit*, 467 Mich 56 [648 NW2d 602] (2002). [482 Mich 1014 (2008).]

In addition, I separately requested the parties to brief "whether, under relevant legal and constitutional principles, MCL 333.2441(1) properly delegates authority to Charlevoix County and the [NMCHA] to promulgate the regulations at issue in this case." *Id*.

Rather than writing an opinion of its own addressing the issues we asked the parties to brief, the majority has adopted the Court of Appeals opinion verbatim (except that the preemption analysis has been excluded). As a result, the majority opinion only peremptorily addresses the first and third issues that we specifically asked the parties to brief in response to the Court of Appeals opinion.

I concur with the majority's conclusion that the four county boards of commissioners acting in conjunction with the NMCHA possessed the authority to adopt that part of the clean indoor air regulation that restricts smoking and that such regulation is not preempted by the Michigan Clean Indoor Air Act. I dissent, however, from the conclusion that the part of the regulation that creates a private cause of action against employers is valid. Rather, I would hold that a county board of commissioners cannot create a private cause of action against a private

3

entity that alters Michigan's at-will employment doctrine. I also dissent from the conclusion that the part of the regulation that restricts smoking fits within one of the *Suchodolski* exceptions to at-will employment. I would not extend the *Suchodolski* exceptions to the at-will employment doctrine to the circumstances of this case.

## I. NON-DELEGATION

The parties were asked to brief whether the regulation was enacted pursuant to a proper delegation of legislative authority. As explained in *Taylor v Gate Pharmaceuticals*, 468 Mich 1, 10; 658 NW2d 127 (2003), and *Blue Cross & Blue Shield v Governor*, 422 Mich 1, 51-55; 367 NW2d 1 (1985), the Legislature may not delegate its legislative power to the executive branch. The Legislature may, however, delegate a task to an executive branch agency if it provides "sufficient standards." *Taylor, supra* at 10 n 9. Such accompanying standards are essentially viewed as transforming an improper delegation of legislative power into a proper exercise of executive power. See *BCBSM*, *supra* at 51.

The regulation at issue here was adopted pursuant to MCL 333.2441(1), which provides in relevant part:

> A local health department may adopt regulations necessary or appropriate to implement or carry out the duties or functions vested by law in the local health department. The regulations shall be approved or disapproved by the local governing entity. The regulations shall become effective 45 days after approval by the local health department's governing entity or at a time specified by the local health department's governing entity. The regulations shall

be at least as stringent as the standard established by state law applicable to the same or similar subject matter.[1]

Plaintiffs contend that this provision does not include sufficient legislative standards or guidance for the enactment of regulations and thus amounts to an improper delegation of legislative authority. I believe that the non-delegation doctrine is ultimately inapplicable in this case. This is because the provision specifies that: "[t]he regulations shall be approved or disapproved by the local governing entity," and the regulation only becomes effective "after approval" by the governing entity. That is, a local health department regulation does not become effective *unless* it is approved by the local governing entity, which in this case is the county boards of commissioners. Thus, the provision contemplates a two-step process: first, the local health department proposes a regulation and, second, the local governing entity approves the regulation. Only then does the regulation take effect. When the elected county boards of commissioners approved this regulation, they were acting pursuant to their *own* legislative powers as the governing entities of their respective local jurisdictions. The non-delegation doctrine does not apply to the proper exercise of legislative power by a legislative body. See *Bendix Safety Restraints Group v City of Troy*, 215 Mich App 289; 544 NW2d 481 (1996), adopting the dissent from *Marposs Corp v City of Troy*, 204

---

[1] This provision is part of the Public Health Code, as is the Michigan Clean Indoor Air Act. Accordingly, MCL 333.2441(1) authorizes regulations addressing any matter that comes within the Public Health Code and is not limited to smoking regulations.

5

Mich App 156; 514 NW2d 202 (1994) (holding that actions taken by a city council pursuant to a statute do not violate the non-delegation doctrine because a city council exercises legislative, not executive, power). Thus, when the elected and accountable boards of commissioners approved the regulation, notwithstanding that the regulation originated with the unelected and unaccountable health departments, they were exercising their own legislative powers and were unaffected by the non-delegation doctrine.

Therefore, I believe that the principal question here is not whether the regulation was enacted pursuant to an improper delegation of legislative authority, but whether the county boards of commissioners, acting in conjunction with the NMCHA, possessed the legislative authority to adopt the regulation.

## II. AUTHORITY

Plaintiffs argued below that the NMCHA lacked the authority to adopt the regulation because its smoking restrictions are stricter than those permitted under the Michigan Clean Indoor Air Act.[2] The trial court and the Court of Appeals disagreed, and I concur with those courts' conclusions, although on the basis of a different rationale.

---

[2] MCL 333.2441(1) specifically states that a local health department regulation "shall become effective 45 days after approval by the local health department's governing entity . . . . " Given that the regulation would have no effect unless the county boards of commissioners had approved it, we are effectively reviewing a county regulation, notwithstanding the fact that the regulation may have originated in a local health department.

In the course of concluding that the NMCHA and the county boards of commissioners possessed the authority to enact the regulation, the Court of Appeals cited among other things: (1) MCL 333.2433(1), which charges that local health departments "continually and diligently endeavor to prevent disease, prolong life, and promote the public health through organized programs"; (2) MCL 333.2435(d), which provides that a local health department may "[a]dopt regulations to properly safeguard the public health"; and (3) MCL 333.2441(1), which authorizes the adoption of regulations that "are necessary or appropriate to implement or carry out the duties or functions vested by law in the local health department." After additionally noting that MCL 333.1111(2) provides that the Public Health Code is to be "liberally construed for the protection of the health, safety, and welfare of the people of this state," the Court of Appeals concluded that these statutes evinced a legislative intent to permit the instant regulation.

I agree with the Court of Appeals that the boards of commissioners, acting in conjunction with the NMCHA, possessed the authority to adopt the part of the regulation that restricts smoking. MCL 333.2435(d) specifically provides that a local health department may adopt "regulations to properly safeguard the public health . . . ." This provision granted the authority to adopt the part of the clean indoor air regulation that restricts smoking. MCL 333.2441(1) further provides that a local health department "may adopt regulations necessary or appropriate to implement or carry out the duties or functions vested by law in the local health department," and protecting the public's health, including through the

7

implementation of an anti-smoking regulation if that is a local health department's determination, would clearly seem to be a responsibility vested in such departments. And, the regulation is consistent with MCL 333.2433(1), at least to the extent it is designed to "prevent disease, [and] prolong life." The only limitation that the Legislature placed on the promulgation of such a regulation by a local health department, and the corresponding board of commissioners, is that it "be at least as stringent as the standard established by state law applicable to the same or similar subject matter." MCL 333.2441(1). The regulation of smoking here is clearly more stringent than the Michigan Clean Indoor Air Act and thus satisfies this limitation.[3]

## III. PRIVATE CAUSE OF ACTION

Section 1011 of the regulation provides that "no person or employer shall discharge, refuse to hire or in any manner retaliate against any employee, applicant for employment, or customer because such employee, applicant, or customer exercises any right to a smoke-free environment afforded by the regulation."

---

[3] The parties agree that the regulation restricts smoking in a greater range of public and private places than the Michigan Clean Indoor Air Act. For example, the regulation applies to business vehicles occupied by more than one person whereas the state statute does not. The regulation also imposes greater obligations on businesses than the state statute. For example, MCL 333.12605(1) provides that if an owner designates a smoking area, "existing physical barriers and ventilation systems shall be used to minimize the toxic effect of smoke in both smoking and adjacent nonsmoking areas." In contrast, § 1008(6) of the regulation requires a separate enclosed area that is "independently ventilated" if an owner designates a smoking area.

Section 1010(F) provides that a "private citizen may bring legal action to enforce this regulation." And § 1012(F) provides that "an employee or a private citizen may bring legal action to enforce this regulation." The lower courts implicitly concluded that the private cause of action created by this regulation is valid. I respectfully disagree and would hold that a county board of commissioners cannot create a private cause of action that is in contravention of Michigan's "at-will" employment doctrine.

The majority concludes that the local health department acting in conjunction with the county board of commissioners can create a right or private cause of action against a private entity that alters Michigan's at-will doctrine. The majority also concludes that the private cause of action created by the regulation is encompassed by the *Suchodolski* exceptions to the at-will doctrine.

"Boards of supervisors shall have legislative, administrative and such other powers and duties as provided by law." Const 1963, art 7, § 8. Local governments, including counties, have no inherent authority to enact laws or to promulgate regulations because they are governments of limited powers acting pursuant to delegated authority. *City of Kalamazoo v Titus*, 208 Mich 252, 262; 175 NW 480 (1919), quoting 1 Cooley, Constitutional Limitations (7th ed), pp 163, 264 ff. A county board of commissioners may not exercise a power not vested in it by statute. *Pittsfield School Dist No 9 v Washtenaw Co Bd of Sup*, 341 Mich 388, 398; 67 NW2d 165 (1954). A county can exercise only such authority

9

as is expressly or impliedly granted by a superior level of government, and always subject to such restrictions as are annexed to the grant. *Id.*

The Legislature granted authority in MCL 46.11(j) to county boards of commissioners to

> pass ordinances that relate to county affairs and *do not contravene the general laws of this state* or interfere with the local affairs of a township, city, or village within the limits of the county, and pursuant to section 10b provide suitable sanctions for the violation of those ordinances. [Emphasis added.]

Section 10b, MCL 46.10b, authorizes a county board of commissioners to make a violation of an ordinance an infraction that subjects an offender to imprisonment for not more than 90 days or a fine of not more than $500. A county board of commissioners is also authorized to approve a local health department regulation that is "at least as stringent as the standard established by state law." MCL 333.2441(1).

In my judgment, the part of the regulation that allows an employee to bring a legal action to enforce the regulation is beyond the authority of a county board of commissioners to enact. This is because it contravenes the law of at-will employment in this state. The general rule is that "in the absence of a contractual basis for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason." *Suchodolski*, *supra* at 694-695. See also *Rood v Gen Dynamics Corp*, 444 Mich 107, 116; 507 NW2d 591 (1993).

The instant regulation would limit an employer's ability to terminate an at-will employee by creating a new private cause of action by any employee against his employer for wrongful discharge for asserting a right "afforded by the regulation." Thus, the regulation contravenes the general law of this state, the at-will employment doctrine, and the county boards of commissioners simply do not possess the authority to act in such disregard.[4]

---

[4] While MCL 333.2441(1) *does* authorize a county board of commissioners to approve a health department regulation that is "at least as strict as state law," it does *not* at the same time countermand the general limitation in MCL 46.11(j) that a county board may not act in derogation of the general laws of this state in non-health related areas. The at-will employment doctrine is obviously a fundamental aspect of the employment law of this state. The Legislature did not confer authority upon county boards to enact regulations contrary to Michigan's at-will employment doctrine. Contrary to Justice Cavanagh's suggestion, *ante* at 8 n 7, I do not contend that the regulation contravenes the general laws of this state merely because it is a local regulation.

The majority briefly discusses *Mack v Detroit*, 467 Mich 186, 189; 649 NW2d 47 (2002), and correctly notes that *Mack* declined to address whether a city can create a private cause of action against a non-governmental entity. But, *Mack* merely states that it "does not address whether a city can create rights, protect against discrimination, or create a cause of action against a nongovernmental entity." *Id.* at 197 n 12 (emphasis omitted). Such language hardly suggests that a county, in contravention of the laws of this state, can create a new private cause of action against an individual or business.

Similarly, the majority states several times that the county boards in enacting the instant regulation were acting as local "legislative bodies." I agree and have so stated. See, e.g., *infra* at 21 ("a county board . . . is a legislative body"). But the issue here is only whether the anti-retaliation portion of the regulation *exceeds the authority* given to the boards by the Legislature. The majority devotes its efforts to an undisputed point, when there is a disputed point that merits analysis.

11

Moreover, the fact that MCL 46.10b authorizes a county board to enact an ordinance and to provide for a fine of no more than $500 or imprisonment of no more than 90 days lends further support to the conclusion that the creation of a private cause of action for the violation of an ordinance is beyond the powers of a county board.[5]  This is because the express mention of one thing in a statute generally implies the exclusion of similar things.  *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 712; 664 NW2d 193 (2003).  That is, the listing of *allowable* sanctions for the violation of a local ordinance implies that non-listed sanctions are *not allowable*.  See, e.g., *Saginaw Co v John Sexton Corp of Michigan*, 232 Mich App 202, 225; 591 NW2d 52 (1998), which invalidated the penalty provisions of a county ordinance because they exceeded the $500 limit set forth in MCL 46.10b(1).  Thus, even if the regulation did not contravene the general rule of at-will employment, which I believe it does, I would nonetheless conclude that a county board may not create a private cause of action against a private entity simply because they have not been given the authority to do so.[6]

_____

[5] Justice Cavanagh contends in his concurrence that a county board of commissioner's power to create a private right of action is "fairly implied by the relevant law delegating authority to boards of commissioners." *Ante* at 11.  I disagree.  Counties have no inherent authority, being governments of limited powers. *Pittsfield School Dist No 9*, *supra* at 398.  The power to create a private cause of action is not expressly given, and such power is impliedly denied, to counties, as explained earlier, given that they are only expressly allowed to enact ordinances that provide for up to 90 days in a jail and up to a $500 fine.

[6] Justice Cavanagh states that §§ 1010(F) and 1012(F) "do not necessarily contravene the general laws of this state." *Ante* at 14.  He rejects my argument

## IV. *SUCHODOLSKI*

The majority holds that the smoking restriction of the regulation was encompassed within the *Suchodolski* "public policy" exceptions to Michigan's at-

---

that the limits on sanctions a board of commissioners may adopt found in MCL 46.10b (a fine of no more than $500 or imprisonment of no more than 90 days) imply the absence of authority to create a private cause of action. Justice Cavanagh asserts that these limitations do not conflict with §§ 1010(F) and 1012(F) because these sections "do not expressly create any additional penalties beyond those applicable for violation" of the regulation and thus do "not necessarily . . . enhance the extent to which remedies are available." *Ante* at 12-13. I disagree. Sections 1010(F) and 1012(F) authorize a private party to bring a legal action against a business. Justice Cavanagh is apparently suggesting that a judge, as a result of such a civil action, would only be able to impose a remedy consistent with MCL 46.10b(1), although this is nowhere made clear in either Justice Cavanagh's statement or in §§ 1010(F) and 1012(F) themselves. Indeed, given that incarceration of up to 90 days would not even be possible in a civil lawsuit, it is by no means obvious why these regulations could be said to "incorporate" the sanctions of MCL 46.10b(1). Moreover, how clear is it that the trial court would not have available traditional civil remedies under §§ 1010(F) and 1012(F), such as injunctive or equitable relief? There is simply no basis in either the opinion of this Court or in the laws themselves to suggest that what Justice Cavanagh asserts has any basis whatsoever. Perhaps what is most significant is the reality that a fine under MCL 46.10b(1) would be payable to the *county* while a civil judgment issued under §§ 1010(F) and 1012(F) would be payable to the *plaintiff*. This incentive for private citizens to sue, in combination with the fact that such a lawsuit could be brought by *any* private citizen, or by *many* private citizens, could easily be viewed as creating a substantially more onerous burden on an individual business, and therefore a substantially more effective remedy for a violation of the statute, than the possibility only of being charged with an ordinance violation by a local prosecutor who almost certainly will be burdened by the need to address more serious criminal violations. For this reason, I believe that the authorization of a private lawsuit, *in addition* to the relief provided under MCL 46.10b(1), can fairly be said to expand the available remedies for a violation of the statute and thereby contravene the general laws of this state.

13

will employment doctrine. I reject this conclusion and also would not extend these exceptions to include regulations that do not apply statewide.

In *Suchodolski*, this Court recognized exceptions to the at-will doctrine "based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id.* at 695.[7] The Court cited as the circumstances in which such exceptions would apply those involving: (1) "adverse treatment of employees who act in accordance with a statutory right or duty," (2) an employee's "failure or refusal to violate a law in the course of employment," or (3) an "employee's exercise of a right conferred by a well-established legislative enactment." *Suchodolski*, *supra* at 695-696. Importantly, in *Dudewicz v Norris Schmid, Inc*, 443 Mich 68, 80; 503 NW2d 645 (1993),[8] the Court limited

---

[7] We asked the parties to brief whether the *Suchodolski* exceptions are consistent with this Court's decision in *Terrien v Zwit*, 467 Mich 56; 648 NW2d 602 (2002). *Suchodolski* used the following terms to identify public policy: "a statutory right or duty," "a law," and a "well-established legislative enactment." *Suchodolski*, *supra* at 695-696. In *Terrien*, this Court indicated that in determining public policy the focus of the judiciary must ultimately be on the policies that, in fact, have been adopted by the public through our various legal processes, and that are reflected in our state and federal constitutions, our statutes, the common law, and administrative rules and regulations. *Terrien*, *supra* at 67 n 11. I believe the *Suchodolski* exceptions are compatible with *Terrien* because both cases indicate that "public policy" is to be discerned, not in the personal attitudes of judges, but in objective and verifiable sources of the law.

[8] *Dudewicz* was overruled in part on other grounds by *Brown v Detroit Mayor*, 478 Mich 589; 734 NW2d 514 (2007). The majority fails adequately to address *Dudewicz*. First, the majority says the non-retaliation portion of the regulation does not violate Michigan's at-will employment doctrine because it fits within the *Suchodolski* exceptions, but then it contradictorily argues that *Dudewicz* is irrelevant because the WPA does not negate the authority granted by the

14

Legislature. See *ante* at 15. Under *Dudewicz*, if the regulation is enforceable under the WPA then a *Suchodolski* public policy claim does not exist. While Justice Cavanagh reads *Dudewicz* differently than I do, he nonetheless recognizes that "there are circumstances under which § 1011 of the CIAR would be preempted by the WPA and in those cases, under *Dudewicz*, the public-policy exception to the general rule of at-will employment would not apply." *Ante* at 6 n 5.

However, Justice Cavanagh contends that *Dudewicz* is "generally inapplicable here because the CIAR does not create an exclusive remedial scheme that preempts applicable common-law claims, if such claims exist" and that "*Dudewicz* limits the first *Suchodolski* example of a public-policy exception to the at-will employment rule only where a legislative enactment has not only explicitly prohibited the discharge of an employee acting in accordance with a statutory right or duty, but also provided an exclusive remedy for violation of that explicit prohibition." *Ante* at 4-6 n 5. Finally, he indicates that he would overrule the Court of Appeals opinion in *Vagts v Perry Drug Stores, Inc*, 204 Mich App 481; 516 NW2d 102 (1994), to the extent it holds otherwise. *Ante* at 4 n 5. I believe that Justice Cavanagh has misread *Dudewicz*. The key part of that case states:

> In those cases in which Michigan courts have sustained a public policy claim, the statutes involved did not specifically proscribe retaliatory discharge. Where the statutes involved did proscribe such discharges, however, Michigan courts have consistently denied a public policy claim. . . . A public policy claim is sustainable, then, only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue. As a result, because the WPA provides relief to Dudewicz for reporting his fellow employee's illegal activity, his public policy claim is not sustainable. [*Id*. at 79-80.]

Section 1011 specifically proscribes a retaliatory discharge against an employee if an employee "exercises any right to a smoke-free environment afforded by the regulation." Accordingly, under *Dudewicz*, the *Suchodolski* exceptions do not apply because there is no need for a public policy exception if a statute, or, as here, a regulation, prohibits discharge in retaliation for the conduct at issue. While I do not believe those parts of the regulation that create a private cause of action are valid, Justice Cavanagh and the majority take a different view. If valid, they provide all the remedy that is needed and no cumulative *Suchodolski* exception exists under *Dudewicz*. And, even though I would hold those parts of the regulation prohibiting a retaliatory discharge invalid, it is still possible, indeed likely, that those parts of the regulation promising an employee a smoke-free

15

*Suchodolski*, stating that a public policy claim is only sustainable when there is no statutory prohibition against discharge in retaliation for the conduct at issue.[9]

---

environment may be enforceable pursuant to the WPA. Finally, Justice Cavanagh's citation of *Humenny v Genex Corp*, 390 F3d 901 (CA 6, 2004), in support of his claim that *Dudewicz* only limits the first *Suchodolski* exception when the statute [or regulation] provides "an exclusive remedy for violation of that explicit prohibition," is inapt. The actual holding of *Humenny* is that the first issue that must be addressed in considering a public policy claim is whether the plaintiff has identified a well-established legislative enactment that addresses the particular conduct at issue. *Id.* at 907. This is correct. *Humenny* also stated that if the cited statute (or regulation) does not address the particular conduct at issue, there is no need to reach the question whether the statute "provides a remedy to plaintiffs." *Id.* Again, this is correct. And, I note that *Humenny* used the phrase "provides a remedy," not "provides *an exclusive* remedy." There simply is no language in *Humenny* that purports to hold that that *Dudewicz* only limits the first *Suchodolski* exception when the statute (or regulation) provides "an *exclusive* remedy for violation of that explicit prohibition." *Ante* at 4 n 5 (emphasis added). To reiterate, *Dudewicz* limits the first *Suchodolski* exception whenever the cited statute (or regulation) provides a remedy of its own. *Dudewicz*, *supra* at 80. This is because a public policy remedy is obviously not needed when the cited statute or regulation provides a remedy of its own. Justice Cavanagh's citation of *Ohlsen v DST Industries, Inc*, 111 Mich App 580, 586; 314 NW2d 699 (1981), does not support his claim that a cumulative "public policy" claim is allowable where the applicable statute supplies a non-exclusive remedy. While *Ohlsen* observed that the remedy provided by the statute was exclusive, this is a far cry from saying that it would nonetheless have allowed a cumulative public policy claim if the statute had provided for a non-exclusive remedy. Finally, *Dudewicz* noted that remedies provided by a statute for violation of a right having no common-law counterpart are generally exclusive, not cumulative. *Dudewicz*, *supra* at 78. There can be no dispute that the common law did not provide a right to a smoke-free work environment. Thus, the remedies available under §§ 1010(F) and 1012(F) are properly characterized as exclusive, and even under Justice Cavanagh's reading of *Dudewicz*, a public policy claim is barred.

[9] See also *Clifford v Cactus Drilling Corp*, 419 Mich 356; 353 NW2d 469 (1984), in which this Court held that a public policy exception claim did not exist where an employer fired an employee for missing work on account of a work-related injury for which workers' compensation benefits had been paid.

The majority holds that "'the regulation's restriction of the general right to discharge an employee at will is consistent with the exceptions to that doctrine set forth in *Suchodolski*.'" *Ante* at 11.[10] I disagree for two reasons. First, I would not extend the *Suchodolski* exceptions to include a local regulation that conflicts with

[10] Justice Cavanagh concludes that the regulation fits within the first *Suchodolski* exception, for adverse treatment of employees who act "in accordance with a legally recognized right or duty." *Ante* at 3. However, I would point out that the Court of Appeals in *Vagts*, *supra* at 485, stated that *Dudewicz* "probably eliminated the first of the three grounds identified in *Suchodolski*." As I will discuss later, to the extent the regulation may be enforceable through the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., this is correct. That is, if the WPA prohibits discharge in retaliation for the conduct at issue, *Suchodolski* does not even apply by the terms of *Dudewicz*. See also *Shuttleworth v Riverside Osteopathic Hosp*, 191 Mich App 25, 27-28; 477 NW2d 453 (1991), which held that the WPA is the "exclusive remedy" available to an employee terminated for reporting to any public body a violation of any law or regulation of this state, a political subdivision, or the United States. Indeed, I note that Justice Cavanagh agrees that if the regulation is enforceable through the WPA, a "public policy" claim would not be allowed. *Ante* at 6 n 5. The majority states that the WPA does not negate the authority granted by the Legislature in the Public Health Code. *Ante* at 22. But, I have not argued that it does. Rather, I have argued that Public Health Code does not countermand the general limitation of MCL 46.11(j) on a county board to act in derogation of the general laws of this state in non-health related areas. See note 4 of this opinion.

The majority also states that the Legislature has authorized local health departments to enforce Part 126 and rules promulgated under it by any "appropriate action authorized by law." *Ante* at 16, quoting MCL 333.12613(2). This is true, but we are reviewing a local regulation that allows a *private citizen* to file a lawsuit. Given that county boards are only statutorily authorized to enact ordinances that include a fine of up to $500 and a term in jail of up to 90 days, MCL 46.10b, and that fact that the express mention of one thing in a statute generally implies the exclusion of similar things, a statute authorizing a local health department to enforce a regulation hardly constitutes authority for that board, acting in conjunction with a county board, to authorize a *private citizen*, rather than the health board, to enforce a regulation through a private lawsuit.

17

our statewide public policy. The *Suchodolski* exceptions refer to a "statutory right or duty," a "law," and "well-established legislative enactment[s]." The instant regulation at issue is not a statute, and it is not a "well-established legislative enactment." Nor is a county board "the Legislature," although it is a legislative body. While the regulation constitutes the "law" in the four counties, it does not constitute the "law" in any other Michigan counties, much less in all the other Michigan counties. Moreover, the public policy reflected in the regulation is stricter than the public policy established by our Legislature in the Michigan Indoor Clean Air Act and that now applies in all other counties. That is, while the regulation does reflect the public policy of the four counties that enacted it, it cannot, in my judgment, be fairly said to reflect the public policy of the state of Michigan. I would not extend the *Suchodolski* exceptions beyond the limits of *statewide* public policy, at the very least where a local regulation is more restrictive or burdensome than our default statewide public policy. It is one thing for a private employer to be legally accountable for a wrongful discharge that violates a statewide public policy as in *Suchodolski*, but it is considerably more burdensome to subject employers to wrongful discharge lawsuits for a termination that arguably only violates a local public policy, given that all 83 counties could theoretically adopt varying local public policies.[11] Justice Cavanagh contends that

---

[11] Justice Cavanagh contends that "it is up to the Legislature to determine whether the benefits of local regulation outweigh the costs of a lack of statewide uniformity." *Ante* at 7 n 7. However, he fails to consider that the Legislature has

18

under *Suchodolski* "there is no reason to differentiate a legally recognized right or duty created by a state statute and a legally recognized right or duty created by local law." *Ante* at 4 n 4.  I disagree.  Indeed, the use of the modifier "well-established" in *Suchodolski* in describing the kind of "legislative enactment" that would serve as the foundation for its third exception further indicates that *Suchodolski* itself was attempting to draw distinctions between types of legislative enactments, possibly in order to ensure the kind of notice that would be much more effectively communicated to an employer doing business in multiple counties throughout the state by a statewide statute than by a local regulation.[12]

Second, each *Suchodolski* exception requires a valid "statutory right or duty," a "law," or a "well-established legislative enactment" before it is applicable.  As previously explained, that part of the regulation that purports to create a private cause of action against private entities is invalid because it exceeds the authority that MCL 46.11(j) grants a county board.  Thus, I do not join the

---

already done just that by having indicated that a county is only allowed to enact ordinances that "*do not contravene the general laws of this state*."  MCL 46.10b.

[12] *Suchodolski* cited two cases as examples of situations in which a plaintiff had been terminated in violation of a "well established" legislative enactment: *Sventko v Kroger Co*, 69 Mich App 644; 245 NW2d 151 (1976), and *Hrab v Hayes-Albion Corp*, 103 Mich App 90; 302 NW2d 606 (1981).  Both of these cases involved workers' compensation claims.  There are few statutes that are as well established and known to employers as our Workers' Compensation Disability Act, MCL 418.401 *et seq*.

19

majority in its exercise of this Court's common-law powers to extend the exceptions of *Suchodolski* to local regulations.[13]

Anticipating that this Court might conclude that the private cause of action provisions of the regulation is invalid, defendants point out that the regulation has a severability clause[14] and argue that even if that part of the regulation that restricts an employer's general "at will" authority to discharge an employee is invalid, the remaining part of the regulation that restricts smoking would still be enforceable pursuant to the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., because the regulation comes within the WPA's prohibition against

---

[13] Const 1963, art 3, § 7, provides: "The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed." As noted in *Placek v Sterling Hts*, 405 Mich 638, 656-657, 275 NW2d 511 (1979), this Court may develop the common law through its decisions. Justice Cavanagh states that he would not "exclude laws enacted by local legislative bodies from the public-policy exception . . . ." *Ante* at 10. I believe it is more accurate to describe the majority as extending *Suchodolski* to encompass local regulations. Justice Cavanagh acknowledges that the cases and statutes cited in *Suchodolski* included laws adopted by our Legislature, but claims nothing in the opinion indicates the Court found that to be significant. *Ante* at 9 n 9. I disagree. *Suchodolski* only identified statewide laws, and that Court's use of the words "well-established legislative enactment[s]" strongly suggests it was concerned with notice issues. This discussion, I believe, fairly communicates that local regulations would rarely be characterized as constituting "well-established legislative enactment[s]" in the same manner as statewide enactments.

[14] Section 1016 of the regulation provides that if any provision, clause, sentence, or paragraph of the regulation shall be held invalid, such invalidity shall not affect the other provisions of the regulation and the provisions of the regulation that are declared invalid shall be severable.

20

discriminating against an employee for reporting a violation of a regulation promulgated by a political subdivision of the state.

MCL 15.362 provides:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of *a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state*, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [Emphasis added.]

Defendants argue that the regulation here clearly comes within the "law or regulation or rule promulgated pursuant to a law of this state, [or] a political subdivision of this state" language in the WPA. Thus, defendants contend that the regulation may be enforced by a plaintiff under the WPA. Because this argument was not considered by the trial court or the Court of Appeals, I would remand to the Court of Appeals to consider this issue in the first instance. If defendants are correct that the regulation is enforceable under the WPA, then the *Dudewicz* limitation, to wit, that a public policy claim is only sustainable when there is no applicable statutory prohibition against discharge in retaliation for the conduct at issue, would apply because the WPA would constitute an applicable statutory prohibition against discharge in retaliation for the conduct at issue.

21

Finally, to the extent that plaintiffs' arguments suggest that the part of the regulation that restricts smoking more stringently than the Michigan Clean Indoor Air Act is "unwise" and results in "bad policy," these concerns must be addressed to the Legislature or the county boards of commissioners. *People v Kirby*, 440 Mich 485, 493-494; 487 NW2d 404 (1992). See also *Halloran v Bhan*, 470 Mich 572, 579; 683 NW2d 129 (2004). Plaintiffs, of course, are also free to pursue remedies through the electoral and political processes.[15]

## V. CONCLUSION

I agree with the majority that the NMCHA, acting in conjunction with the local boards of commissioners, possesses the authority to enact that part of the regulation that restricts smoking "at least as stringently" as the Michigan Clean Air Act, and this regulation is not preempted by the Michigan Clean Indoor Air Act. I dissent, however, from the majority's implicit ruling that the part of the regulation that creates a private cause of action against private employers is valid. I would hold instead that MCL 46.11(j) precludes a county board of commissioners from creating a private cause of action against a private entity that alters Michigan's "at-will" employment doctrine. I also dissent from the conclusion that the part of the regulation that restricts smoking fits within one of

---

[15] Indeed, we are advised that Charlevoix County, though it did not formally withdraw its ratification of the regulation, recently decided *not* to enforce the regulation. I do not know for certain, but I presume, that some or much of the impetus for this decision was a function of political and other related activities in that county.

22

the *Suchodolski* exceptions to "at-will" employment, and I would not extend the *Suchodolski* exceptions to include local regulations, at the very least where such regulations conflict with statewide public policy. Finally, I would remand to the Court of Appeals to consider in the first instance whether an employee could file a cause of action under the WPA to enforce his or her rights under the part of the regulation that restricts smoking.

Stephen J. Markman
Maura D. Corrigan
Robert P. Young, Jr.

23